**TRIPLE G LANDFILLS, INC., Plaintiff,**

v.

**BOARD OF COMMISSIONERS OF FOUNTAIN COUNTY, and Janet Shoaf, David Ziegler, and Richard Klage, in their capacities as members of the Board of Commissioners, Defendants.**

No. IP–90–093–C.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 30, 1991.

George M. Plews, Gwendolyn J. McCarty, Donn H. Wray, Plews & Shadley, George W. Pendygraft, Indianapolis, Ind., for plaintiff.

Robert R. Clark, Richard S. Pitts, Lowe, Gray, Steele & Hoffman, Indianapolis, Ind., for defendants.

### ENTRY

DILLIN, District Judge.

This matter comes before the Court on the plaintiff's motion for partial summary judgment and on the defendants' cross-motion for summary judgment. For the reasons set forth below, the Court grants the plaintiff's motion and denies the defendants' cross-motion.

### Background

The facts relevant to the resolution of the motions before the Court are not in dispute. The plaintiff, Triple G Landfills, Inc. (Triple G), is an Indiana corporation with its principal place of business in Indiana. In July, 1989, Triple G purchased an option to buy a 189–acre tract in Mill Creek Township in Fountain County, Indiana, for possible development as a sanitary landfill site for waste from west central and northwest Indiana, from the Chicago area and from other nearby areas of contiguous states. Shortly after purchasing the option, Triple G spent approximately $175,000.00 on geologic and environmental analyses of whether the tract would be suitable for such use. The results indicate that the tract is suitable for development as a landfill.

On July 31, 1989, the Board of Commissioners of Fountain County (the Commissioners), the local governmental body with legislative and executive control of the county in which Triple G's tract is located, convened a special meeting to discuss Triple G's possible construction of a landfill in Mill Creek Township. Members of the public in attendance at the meeting expressed concern about Triple G's plans.

As a result of that concern, the Commissioners took action to block Triple G. On August 2, 1989, they adopted Ordinance 5–1989, which imposed a nine-month moratorium on landfill construction and expansion in Fountain County. On January 2, 1990, the Commissioners adopted Ordinance 7–1989, the "Fountain County Waste Management Control Ordinance." Finally, the Commissioners adopted the ordinance challenged in the present case, Ordinance 1–1990 (the challenged Ordinance or the Ordinance), which amended and supplanted Ordinance 7–1989 and is still in effect.

The challenged Ordinance establishes a second permit application procedure at the county level that prospective landfill operators must initiate after seeking and receiving approval at the state level from the Indiana Department of Environmental Management (IDEM), the state agency charged with determining proposed sites' suitability and safety for landfill use.[1]

---

**1.** Triple G, apparently awaiting the outcome of this lawsuit, has not yet submitted a landfill permit application to IDEM.

Among its declared purposes is the protection of the health, safety and well-being of the citizens of Fountain County.

The Ordinance sets forth "standards" and "considerations" for the siting, design and operation of sanitary landfills. Most extensive are the "siting standards," which provide:

New sanitary landfill facilities and the expansion of existing sanitary landfill facilities are prohibited from the following areas:

1. Within a 100 year flood plain;

2. Within the critical habitat or migratory habitat of an endangered or threatened species ...;

3. Within wetlands and areas subject to § 404 of the Clean Water Act, as amended;

4. Within two miles of a fault which has had displacement in holocene time....;

5. Within salt dome formations, salt bed formations, underground mines and caves;

6. Within 3,000 feet of a potable water well in use as a water supply for a dwelling or dwellings or agricultural purposes....;

7. Within 3,000 feet of any dwelling, farm building, church or public building ...;

8. Within 3,000 feet of the normal water line of any lake, reservoir or continuously or intermittently flowing stream;

9. Within 4,500 feet of any public water supply....

10. Within 4,500 feet of any public or private school.

Fountain County, Indiana, Ordinance 1–1990, § 7(a) (Attachment E to Plaintiff's Brief in Support of Motion for Summary Judgment). The Ordinance also lists various "siting considerations," such as the economic impact of the proposed landfill and the public support or lack of support for it, which the Commissioners may take into account in determining whether to issue a permit.

According to Triple G's undisputed evidence, siting standards seven and eight alone bar landfills from all but five irregularly shaped areas in Fountain County ranging in size from eight to fifty-two acres and totalling 145 acres. There is no overlap between Triple G's tract and any of the five areas. Furthermore, Triple G has introduced undisputed evidence that because of other requirements in the Ordinance and because of the practicalities of landfill construction, it would not be economically feasible to develop any of the five areas as landfills.

Triple G filed this action to challenge the Ordinance. It seeks a declaratory judgment that the Ordinance is invalid and unenforceable, for any of four reasons: that the Ordinance is preempted by state law, found at Ind.Code § 36–1–3–8(7); that it is a "zoning" ordinance adopted in the absence of the preexisting comprehensive county zoning plan required by state law at Ind.Code § 36–7–4–601(a); that because it effectively excludes all landfill development from Fountain County and because it employs local sentiment as a criterion for permit issuance it is "arbitrary, capricious, and without rational basis," in violation of the Due Process Clause of the United States Constitution, U.S. Const. amend. XIV; and, finally, that it bans interstate commerce in waste, in violation of the Commerce Clause, U.S. Constitution art. I, § 8. In the alternative, should the Court find the Ordinance valid, Triple G seeks damages under either a permanent or a temporary taking theory based on both federal and state constitutional law.

### Discussion

The Court may appropriately enter summary judgment when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In this case, the material facts are not in dispute and the Court need only determine which party is entitled to judgment as a matter of law.

■ The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 over Triple G's federal claims, and pendent jurisdiction over its state claims. Since the federal courts pursue a policy of not reaching federal constitutional issues when a case can be decided on other grounds, even when this means disposing of a case on pendent state-law grounds without ever reaching any federal-law issues, *Hagans v. Lavine*, 415 U.S. 528, 545–47, 94 S.Ct. 1372, 1383–84, 39 L.Ed.2d 577, 592–94 (1974), the Court begins by addressing Triple G's statelaw claims.

The first of these is the claim that the Ordinance is preempted by state law. The Indiana Code provides:

> **Powers specifically prohibited.**—A unit [of local government] does not have ...
>
> (7) The power to regulate conduct that is regulated by a state agency, except as expressly granted by statute.

Ind.Code § 36–1–3–8(7). Triple G points out that IDEM does regulate the siting of landfills. Indeed, IDEM is required by statute to promulgate a state solid waste management plan, which must provide "[t]he establishment of general criteria for the siting, construction, operation, closing, and monitoring of final disposal facilities." Ind.Code § 13–9.5–3–3.

All the subjects covered by the Ordinance are also covered by IDEM regulations, but many of IDEM's requirements differ from the Ordinance's. Thus, the Ordinance employs many of the same siting criteria as the IDEM regulations, but makes them more restrictive. For example, while the state merely prohibits landfill construction within the critical habitat of an endangered species, 329 Ind.Admin.Code § 2–10–1(1)(B), Fountain County prohibits landfill construction within the critical *or migratory* habitat of an endangered *or threatened* species. Ordinance § 7(a)(2). Similarly, whereas several of IDEM's distance requirements may be waived, the corresponding requirements in the Ordinance are both greater and non-waivable. *Compare, e.g.,* 329 Ind.Admin.Code § 2–10–1(1)(G) (prohibiting landfill construction within 600 feet of any dwelling unless owner and occupant of dwelling consent) *with* Ordinance § 7(a)(7) (prohibiting landfill construction within 3000 feet of any dwelling, farm building, church or public building, without exception).

The Ordinance also places additional restrictions not found in IDEM's regulations. For example, the Ordinance prohibits landfill construction within 4500 feet of any public or private school, Ordinance § 7(a)(10), a restriction that has no counterpart in the state regulations. Similarly, Section 7(c)(1) of the Ordinance incorporates by reference IDEM's design standards for leachate collection systems, but, unlike the IDEM regulations, the Ordinance does not permit any alternatives to those standards. Moreover, the Ordinance's design standards add a requirement that has no counterpart in IDEM's regulations: At closure, landfills in Fountain County may not be higher than ten feet above ground level. Ordinance § 7(c)(2). Next, the Ordinance's operating standards incorporate by reference IDEM's operating standards, while adding two requirements not found in the IDEM regulations. *Id.* § 7(d). The comparisons go on and on.

The Commissioners argue that Fountain County has the authority to adopt such regulations, which they insist are supplementary rather than conflicting, because this authority is, in the language of the preemption provision, "expressly granted by statute." Ind.Code § 36–1–3–8(7). The Commissioners find the express grant of power in the following provision of the Indiana Code:

> [IDEM] shall encourage and assist local units of government in developing programs and facilities for air, water, radiation, odor, and noise pollution control, wastewater treatment, water resource development, and solid waste management.

Ind.Code § 13–7–3–10. The Commissioners further urge the Court to defer to IDEM's own interpretation that Section 13–7–3–10 does not preempt local ordinances like the one at issue in the present case, an inter-

pretation that the Commissioners find in the following provision of the Indiana Administrative Code:

> The issuance of a permit [by IDEM] does not:
>
> ... preempt any duty to comply with other state or local requirements.

329 Ind.Admin.Code § 2–8–7(a).

■ The Court is unpersuaded. Although the Commissioners argue that IDEM's mandate to "encourage and assist" local governments is "tacit" recognition of local governments' authority to regulate landfills, this does not amount to the express authorization required by Section 36–1–3–8(7) to avoid preemption. Moreover, there is no indication in the Indiana statutes that the "programs and facilities" to which Section 13–7–3–10 refers encompass the detailed regulation of landfill siting, design and operation that the Fountain County Ordinance provides. Finally, the fact that IDEM may not have intended to preempt local regulation of landfills is irrelevant, since it takes a state *statute* to save an ordinance that regulates conduct regulated by a state agency. The Court thus finds that Section 13–7–3–10 does not expressly authorize the Ordinance. Accordingly, because the Commissioners have not suggested any other possible source of express authority for regulation at the county level and because IDEM, a state agency, regulates the subject matter of the Ordinance, the Court finds the Ordinance to be preempted by Section 36–1–3–8(7) of the Indiana Code.[2]

The preemptive effect of Section 36–1–3–8(7) is not the only reason why the Ordinance is invalid under Indiana law. The Ordinance must also be struck down under Indiana Code Section 36–7–4–601(a) as an attempt to zone in the absence of a pre-existing comprehensive zoning plan.[3] The parties have stipulated that no comprehensive plan exists and that if the Ordinance is a zoning ordinance it is invalid. They disagree, however, as to whether the Ordinance is a zoning ordinance. Because the Court finds the Ordinance to be a zoning ordinance, it finds the Ordinance invalid on this ground, as well.

In support of their position that the Ordinance is not a zoning ordinance, the Commissioners quote cases from other jurisdictions, treatises and legal encyclopedias in which zoning is defined as the division of a municipality or county into districts and the regulation of structures by district. *See, e.g., City of Moline Acres v. Heidbreder,* 367 S.W.2d 568 (Mo.1963);[4] 101A C.J.S. *Zoning & Land Planning,* § 2(a). From these definitions, none of which is an Indiana one, the Commissioners infer that the Fountain County Ordinance is not a zoning ordinance because it makes no division into districts but applies to Fountain County as a whole.

The Commissioners also attempt to analogize two cases in which courts have said that an ordinance restricting trailer and mobile home parking in like manner throughout the city was not a zoning ordinance: *City of Astoria v. Nothwang,* 221 Or. 452, 351 P.2d 688 (1960), and *Barefield v. Davis,* 251 So.2d 699 (Fla.Dist.Ct.App. 1971). The Commissioners argue that the ordinances discussed in those cases were not zoning ordinances because they "regulate[ ] operations concerning land with the objective of promoting public health, safety, and sanitation," rather than "legislate particular uses of land according to defined districts."

Finally, the Commissioners attempt to distinguish the decision of one of our broth-

---

2. The Court holds that the entire Ordinance is preempted, despite the Ordinance's severability provision (Section 21(b)), because all the subjects it covers—permit application procedures, siting, design and operating standards, financial responsibility, closure standards, monitoring and other requirements—are regulated by IDEM.

3. That Section provides:

   [N]o zoning ordinance may be adopted until a comprehensive plan has been approved for the jurisdiction under the 500 series of this chapter.

   Ind.Code § 36–7–4–601(a).

4. All the parties are reminded that under Local Rule 12 (modified 1988), they should have sub-

er judges in *Pro–Eco v. Board of Commissioners,* 776 F.Supp. 1368 (S.D.Ind.1990). In that case, Judge McKinney was faced with the similar argument that Jay County's ordinance was not a zoning ordinance, although it imposed a moratorium on landfill construction for three years or until a comprehensive zoning plan was adopted, and established an Area Land Use Management Committee to study Jay County's need for area wide planning, with focus on landfills. Judge McKinney said:

> Despite the County's argument to the contrary, the moratorium is a zoning ordinance. The plain fact is that the ordinance is an attempt by the county to regulate the use of a piece of property. To say, as does the County, that this ordinance is not a zoning ordinance because it does not purport to regulate the county by districts is to ignore the general notion that an object of zoning is to regulate the use of land. See 30 I.L.E. 635 Zoning. To say that an ordinance which furthers the goals of zoning is not a zoning ordinance is less than convincing.

*Id.,* at 1371. The Commissioners argue that Judge McKinney's decision has no bearing on the present case because *Pro–Eco* involved a moratorium on construction, rather than what they characterize as simply a regulatory permit process coupled with regulation of landfill *operations,* and because the *Pro–Eco* ordinance attempted to create a Land Use Management Committee, which Fountain County's does not.

This Court rejects the Commissioners' argument that the Ordinance is not a zoning ordinance. Although zoning is frequently defined as prescribing different land uses for different districts, cases have also recognized as zoning those ordinances that limit or exclude a particular land use from an entire municipality or county. In such cases, an ordinance stands or falls on whether it is a reasonable exercise of the authority delegated to the local unit of government by its state. Thus, for example, in *City of Moline,* which the Commissioners cite, the court, after defining zoning as requiring districting, struck down an ordinance that created a single district for the entire municipality and limited it to single family residences. The *Moline* court did not base its decision on a finding that the ordinance was not zoning. Rather, it reasoned that the city had no power under its zoning authority as established by state law to place all of its territory into a single district, or to zone in the absence of a comprehensive plan, which the challenged ordinance was not. As for the Commissioners' mobile home cases, *City of Astoria* and *Barefield,* there the question whether the ordinances were zoning or not was not directly at issue and was only mentioned in passing by the courts with little or no reasoning in support. Those cases, therefore, are of no persuasive authority.[5]

It is clear from all the cases that the proper characterization of Fountain County's Ordinance must be determined as a matter of Indiana law. The Commissioners have pointed to no Indiana case or statute limiting the power of local governments to place all of their territory in a single district. Nor do they explain why the Court should not take the Indiana legislature at its word when it says: "For the purposes described in subsection (c), the [county] legislative body may do the following in the zoning ordinance: (1) Establish *one (1) or more* districts...." Ind.Code § 36–7–4–601(d)(1) (emphasis added). Nor do they offer any persuasive reasons for not applying the *Pro–Eco* holding in this case. Like the moratorium imposed in *Pro–Eco,* the Fountain County Ordinance, whether or not its effect is to exclude landfill development entirely from the County, clearly places restrictions on using land for landfills. Accordingly, the Court finds that the Ordinance is a zoning ordinance but is invalid

mitted copies of state cases they rely on in their briefs that are not published in North Eastern Reporter or in Northeastern Reporter Second.

**5.** Moreover, the Commissioners' attempt to characterize ordinances as non-zoning that "regulate[ ] operations concerning land with the objective of promoting public health, safety, and

sanitation" is puzzling, given that the main purpose of zoning, an exercise of the police power, is held universally to be the promotion of "the health, safety, morals or general welfare of the community." 82 Am.Jur.2d *Zoning and Planning* § 38, at 446; *see* Ind.Code § 36–7–4–601(c)(3).

**534**

under Indiana Code Section 36–7–4–601(a) because it was passed in the absence of a comprehensive zoning plan.

### Conclusion

The Court finds that there are no genuine issues of material fact and that Fountain County Ordinance 1–1990 is invalid and unenforceable because it is preempted by state law and because it is an attempt to zone in the absence of a comprehensive plan. Accordingly, the Court grants the plaintiff's motion for partial summary judgment and denies the defendants' motion for summary judgment. Because the Court has found that the Ordinance is invalid and unenforceable, Triple G's claims for damages based on takings theories, which it pleaded in the alternative, are moot. Accordingly, the Court enters summary judgment in favor of the plaintiff and dismisses this cause.