**TRIPLE G LANDFILLS, INC.,**
an Indiana corporation,
**Plaintiff–Appellee,**

v.

**BOARD OF COMMISSIONERS OF FOUNTAIN COUNTY, INDIANA, and Janet Shoaf, David Ziegler and Richard Klage, in their capacities as members of the Board of Commissioners, Defendants–Appellants.**

No. 91–3507.

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1992.

Decided Oct. 5, 1992.

George Plews, Donn H. Wray (argued), Plews & Shadley, Indianapolis, Ind., for plaintiff-appellee.

Richard S. Pitts (argued), Robert R. Clark, Lowe, Gray, Steele & Hoffman, Indianapolis, Ind., for defendants-appellants.

Before CUMMINGS and FLAUM, Circuit Judges, and LEE, District Judge.*

FLAUM, Circuit Judge.

In July 1989, Triple G Landfills, Inc. (Triple G) acquired an option to purchase a 189–acre tract in Fountain County, Indiana, on which it hoped to build a sanitary landfill. Subsequent geological tests and engineering work performed by Triple G, at a cost of approximately $175,000, confirmed that the site was suitable for use as a landfill. Local residents soon caught wind of Triple G's plans and, as is often the case, were less than thrilled. On July 31, the Fountain County Board of Commissioners (Board) convened a special meeting to address the issue, and over the next six months enacted a series of measures designed to restrict landfill construction in

the county. The final measure, an ordinance, is the subject of this case.

For a number of years, the State of Indiana has required prospective landfill operators to submit a permit application to the Indiana Department of Environmental Management (IDEM), the state agency charged with regulating the siting, design, operation and closure of sanitary landfills. The ordinance adds a second layer of regulations, at the county level, requiring prospective operators who have already obtained a state permit to submit another permit application to the County, and forbidding the construction or operation of landfills without a county permit. The siting standards imposed under the ordinance are far more stringent than those imposed by the State, and here effectively preclude Triple G from developing its tract—or any other tract in the County, for that matter—as a landfill.

Triple G brought suit, seeking a declaration that the ordinance was invalid under the federal constitution and state law, and a permanent injunction against its enforcement. The district court overruled the County's motion to dismiss for want of ripeness and standing, and subsequently granted summary judgment to Triple G, resting its decision entirely on state law. *Triple G Landfills, Inc. v. Board of Comm'rs*, 774 F.Supp. 528 (S.D.Ind.1991). The County appeals both decisions, and we affirm.

I.

Before reaching the merits, we first consider the County's contention that this dispute is not ripe for judicial review, a contention which, if correct, would deprive us of jurisdiction and compel dismissal of this case. U.S. Const. art. III, § 2. The ripeness doctrine deals with the time, if any, at which a party may seek pre-enforcement review of a statute or regulation. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 356, 42 L.Ed.2d 320 (1974); *see generally* Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.1, at 98–99 (1989). It seeks to avoid

* The Honorable William C. Lee, of the Northern District of Indiana, sitting by designation.

the premature adjudication of cases when the issues posed are not fully formed, or when the nature and extent of the statute's application are not certain. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *American Booksellers Ass'n, Inc. v. Hudnut,* 771 F.2d 323, 327 (7th Cir.1985), *aff'd without opinion,* 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986). Inquiries into ripeness generally address two factors: first, whether the relevant issues are sufficiently focused so as to permit judicial resolution without further factual development; and, second, whether the parties would suffer any hardship by the postponement of judicial action. *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515; *General Fin. Corp. v. FTC,* 700 F.2d 366, 371 (7th Cir. 1983).

█ Here, the first factor weighs heavily in favor of finding this case ripe for judicial review. Admittedly, Triple G has not yet submitted a permit application to the County. Were this a regulatory takings case, Triple G most likely could not have brought suit until the appropriate administrative body, here the County, rendered a final decision on its application. *See, e.g., Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). The reason is plain: takings cases are fact-intensive, and require a careful examination of the challenged decision's economic impact and "the extent to which it interferes with reasonable investment-backed expectations." *Williamson County,* 473 U.S. at 190–91, 105 S.Ct. at 3118–19. This lawsuit, however, mounts a facial attack upon the validity of the ordinance itself, not a challenge to a particular administrative decision reached thereunder. The issues posed are purely legal—as we discuss below, the case revolves exclusively around the question of whether the ordinance is a "zoning ordinance" under Indiana law—and would not be clarified by administrative proceedings or any other type of factual development. As such, the case is fit for judicial decision. *Thomas v. Union Carbide Agric. Prods.*

*Co.,* 473 U.S. 568, 581, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985); *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515; *American Booksellers,* 771 F.2d at 327.

The second factor, hardship to the parties of delaying review, poses a slightly more subtle problem, whose resolution requires that we first ascertain the scope and practical effect of the ordinance. ·Triple G submitted evidence that the ordinance—in particular two of its several siting specifications—would foreclose landfill construction on all but five scattered, irregularly shaped and infeasible sites, and hence effectively ban any landfill development throughout the County. In response, the County points out that the ordinance, by its terms, permits and was intended to foster appropriate landfill development in Fountain County. Important for our purposes, however, is not what the ordinance purports to do, but what it actually does. *Cf. Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). Significantly, the County did not refute in the district court, and does not refute here, Triple G's contentions that the ordinance, in practice, precludes the construction and operation of a landfill anywhere in Fountain County, including the site on which Triple G acquired an option to purchase; like the district court before us, we view these contentions as undisputed.

Viewing matters in this light, it becomes apparent that delaying judicial review of the ordinance will work a substantial hardship to Triple G. Constructing a landfill entails considerable expense and advanced planning, including preparation of the state permit application and arduous work at the proposed site. Triple G has already acquired an option to purchase a site and expended $175,000 on site development and engineering work. This investment demonstrates that Triple G has a direct, tangible, and not merely a hypothetical interest in the subject matter of this litigation, *Abbott Laboratories,* 387 U.S. at 153–54, 87 S.Ct. at 1517–18, for the ordinance will effectively and definitely prohibit Triple G from following through with its current plans even if it obtains a state permit. *Cf. Ori-*

*ental Health Spa v. City of Fort Wayne,* 864 F.2d 486 (7th Cir.1988) (challenge to massage parlor licensing ordinance not ripe where no real threat that city would use it to revoke or suspend plaintiff's license); *Northside Sanitary Landfill, Inc. v. Thomas,* 804 F.2d 371 (7th Cir.1986).

Accordingly, decisions Triple G must make " 'now or in the short future may be affected' by whether we act." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting *Regional Railroad Reorganization Act Cases,* 419 U.S. at 144, 95 S.Ct. at 359). Reviewing the ordinance at this time would permit Triple G to make an informed decision regarding the future of the Fountain County tract. If we uphold the ordinance, Triple G will know that it should proceed no further and cut its losses; if we invalidate the ordinance, Triple G could initiate the IDEM permitting process with the confidence that obtaining a state permit would not be in vain. Postponing judicial action, in contrast, would force an unwarranted dilemma upon Triple G: either scuttle its development plans altogether in deference to a potentially invalid county regulation, or complete the expensive and time-consuming state permit process, submit a permit application that Fountain County is certain to reject, and then, after incurring substantial sunk costs, bring a facial challenge to the ordinance. *See id.* 461 U.S. at 201–02, 103 S.Ct. at 1720–21; *Abbott Laboratories,* 387 U.S. at 152–53, 87 S.Ct. at 1517–18; *American Booksellers,* 771 F.2d at 327. We call the dilemma unwarranted because there is no countervailing benefit—either to the judicial process or the public interest—that would attend such a postponement. *See Union Carbide Agric. Prods.,* 473 U.S. at 582, 105 S.Ct. at 3333. These considerations suggest that this dispute is ripe for judicial action.

The County maintains that because Triple G has yet to obtain or even apply for a state permit, it cannot yet apply for a county permit, which means that it faces no immediate threat of enforcement. This, according to the County, renders Triple G's alleged injuries from the ordinance conjectural and hypothetical, and makes this case premature. The Supreme Court rejected a similar contention in *Pacific Gas & Electric, supra.* That case involved a challenge, brought by public utilities, to a state statute imposing a moratorium on the certification of new nuclear power plants. The statute provided that the moratorium would be lifted only when the state determined that, in its view, a means to safely dispose of high-level nuclear wastes had been developed. Although the plaintiff-utilities had yet to seek state certification, the Court held that the challenge was ripe. In light of the uncertainty the utilities faced regarding whether the statute eventually would stymie their plans, as well as the considerable advance planning and expense involved in developing nuclear power plants, the Court reasoned that the utilities did "not have to await the consummation of threatened injury to obtain preventive relief." *Pacific Gas & Elec.,* 461 U.S. at 201, 103 S.Ct. at 1721 (quotations omitted). The Court, in other words, believed the better course would be to let the utilities know where they stood, rather than compel them to first engage in an expensive and lengthy certification process only to find that, in the end, they had wasted their time and money.

The same holds true here. Given the virtually preclusive effect of the ordinance at the county level, there would be no point in requiring Triple G to engage in a state permitting process—a process that the County itself admits is "withering and expensive," Def.'s Reply Br. at 3—as a prerequisite to filing suit. *See Lucas v. South Carolina Coastal Council,* —— U.S. ——, —— n. 3, 112 S.Ct. 2886, 2891 n. 3, 120 L.Ed.2d 798 (1992) (requiring land owner to submit a development plan prior to challenging state anti-development statute "would have been pointless," for the statute would have foreclosed development under any circumstances). There is always the chance that IDEM will turn down Triple G's permit application, but that contingency, in and of itself, is not sufficient to defeat ripeness, *see Price v. Pierce,* 823

F.2d 1114, 1118–19 (7th Cir.1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988), particularly in light of the substantial practical effect the ordinance currently has on Triple G's long-term plans. *See Pacific Gas & Elec.,* 461 U.S. at 201–02, 103 S.Ct. at 1720–21. The ripeness doctrine requires a live, focused case of real consequence to the parties. It does not require Triple G to jump through a series of hoops, the last of which it is certain to find obstructed by a brick wall. The County's protestations notwithstanding, this case is ripe for our review, and Triple G has standing to bring it for essentially the same reasons. *See American Booksellers,* 771 F.2d at 327.

## II.

■ We proceed to the merits. Triple G challenges the ordinance on four grounds, two arising under the federal constitution, and two under state law. One of the constitutional issues, which involves whether the ordinance bans interstate commerce in waste in violation of the "dormant" commerce clause, raises some rather interesting and timely questions in light of *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources,* —— U.S. ——, 112 S.Ct. 2019, 119 L.Ed.2d 139 (1992), and *Chemical Waste Management, Inc. v. Hunt,* —— U.S. ——, 112 S.Ct. 2009, 119 L.Ed.2d 121 (1992). But it is well settled that federal courts should avoid addressing federal constitutional issues when it is possible to dispose of a case on pendent state grounds. *Schmidt v. Oakland Unified School Dist.,* 457 U.S. 594, 595, 102 S.Ct. 2612, 2612, 73 L.Ed.2d 245 (1982); *Chemerinsky, supra,* § 5.4, at 278. It is possible to do so here.

The district court rested its grant of summary judgment on both pendent grounds, but we deem it necessary to address only one. Indiana law prohibits local governmental bodies from enacting zoning ordinances in the absence of a comprehensive zoning plan. Ind.Code § 36–7–4–601(a). The parties stipulate that the County has not enacted a comprehensive plan, and that the ordinance is invalid if

classified as a zoning ordinance. Hence, the only issue remaining is whether the ordinance is a zoning ordinance under Indiana law. The district court held that it was, and we review that decision *de novo. Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

■ We recently had occasion to address a similar ordinance under nearly identical circumstances in *Pro–Eco, Inc. v. Board of Commissioners,* 956 F.2d 635 (7th Cir. 1992), in which we held that a county ordinance imposing a temporary moratorium on sanitary landfill construction was a zoning ordinance under Indiana law. *Pro–Eco* addressed and rejected many of the arguments the County raises in this case, *see id.* at 638–39; *see also Triple G Landfills,* 774 F.Supp. at 532–33 (discussing *Pro–Eco* ), and we see no reason to revisit here terrain covered so recently. Accordingly, we limit our attention to two matters. The first regards the County's contention that the ordinance is not a zoning ordinance because it does not partition the County into two or more distinct districts. While it is true that in some states there is no such thing as a single-district zoning ordinance, *see, e.g., Gundersen v. Bingham Farms,* 126 N.W.2d 715 (Mich.1964); *De Benedetti v. River Vale Township,* 21 N.J.Super. 430, 91 A.2d 353 (1952), that is not the case in Indiana. The state enabling statute authorizes zoning bodies "having jurisdiction over the geographic area described in the zoning ordinance [to] [e]stablish *one (1) or more* districts, which may be for agricultural, commercial, industrial, residential, special or unrestricted uses." Ind.Code § 36–7–4–601(d)(1) (emphasis added). Accordingly, Indiana law clearly recognizes that an ordinance can be a zoning ordinance even if it creates only a single district. *See generally* Gary L. Hall, Annotation, *Validity of Ordinance Zoning Entire Municipality For Residential Use,* 54 A.L.R.3d 1282 (1974) (discussing similar cases from other jurisdictions).

■ The second matter concerns the County's attempt to distinguish *Pro–Eco* from the present case. The County con-

292

tends that its ordinance, unlike the one considered in *Pro–Eco*, does not impose a *moratorium* upon landfill construction, but merely establishes a *regulatory regime* governing landfill permitting and operations. As we discussed above, however, the ordinance has the practical effect of foreclosing all landfill development in Fountain County; any alleged distinction between it and a formal moratorium is illusory. We are also told that the municipality in *Pro–Eco* established a "Land Use Management Agency" designed to address land use planning for landfills, while here the County did no such thing. The County, however, does not say, and we cannot ascertain, why this would distinguish *Pro–Eco* in any way relevant to this case.

We conclude that the ordinance is a zoning ordinance, and therefore, due to the absence of a comprehensive zoning plan in Fountain County, is invalid under Indiana law.

AFFIRMED.