BOARD OF COMMISSIONERS OF La-PORTE COUNTY, Indiana and La-Porte County Board of Zoning Appeals, Appellants–Defendants,

v.

TOWN & COUNTRY UTILITIES, INC., Appellee–Plaintiff,

Kingsbury Utility Corporation, Intervenor.

No. 46A04–0212–CV–585.

Court of Appeals of Indiana.

July 10, 2003.

Michael A. Wukmer, Terri A. Czajka, Scott D. Matthews, Ice Miller, Indianapolis, IN, Shaw Friedman, Robert Szilagyi, Schoof Szilagyi & Davis, LaPorte, IN, Attorneys for Appellants.

James W. Kaminski, Matthew J. Hagenow, LaPorte, IN, Intervenor Kingsbury Utility Corporation.

Richard W. Paulen, James W. Tuesley, Barnes & Thornburg, Elkhart, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

The Board of Commissioners of LaPorte County, Indiana, ("Board of Commissioners") and the LaPorte County Board of Zoning Appeals ("BZA") appeal the trial court's grant of summary judgment to Town and Country Utilities, Inc., ("Town and Country"). The Board of Commissioners and the BZA raise two issues, which we restate as:

I. Whether the Board of Commissioners acted within its statutory authority when it adopted Section 8–20 of the LaPorte County Zoning and Master Plan ("Master Plan") making Section 8–20 a zoning ordinance; and

II. Whether the Home Rule Act preempts the application of Section 8–20.

We reverse and remand.

The relevant facts follow. On November 10, 1998, the Board of Commissioners adopted Ordinance Number 98–20, known as the Master Plan. The Master Plan became effective on January 1, 1999. The Master Plan's express purpose "is to compile all zoning ordinances and other ordinances that leave enforcement to the Building Commissioner, Plan Commission, or the [BZA.]" Appellants' Appendix at 49. Section 8–20 of the Master Plan establishes a procedure for a petitioner, who is seeking to develop a sanitary landfill or solid waste facility, to receive a variance or special exception. First, the petitioner must provide to the BZA written approval from the LaPorte Solid Waste District Board ("Local Solid Waste District Board") regarding the need for the sanitary landfill or solid waste disposal facility and that the landfill will meet the District's criteria. Next, the petitioner must meet the variance or special exception requirements of Section 8–18 of the Master Plan.

Town and Country entered into a contract to purchase real estate located in LaPorte County with the intent to construct and operate a sanitary landfill for the disposal of solid waste on the property. Accordingly, Town and Country filed a petition for a special exception with the

BZA seeking approval to place and construct the landfill. On August 21, 2001, the BZA declined to hear Town and Country's petition because the BZA had not received a letter from the Local Solid Waste District Board, as required by Section 8–20. However, the BZA gave Town and Country the option to either withdraw its petition or request a continuance. Town and Country requested a continuance.

Subsequently, on September 20, 2001, Town and Country filed a complaint for declaratory relief against the Board of Commissioners and the BZA seeking a declaratory judgment that Section 8–20 is void and unenforceable. On June 7, 2001, Town and Country filed a motion for partial summary judgment on Count I of its complaint, which had alleged that Section 8–20 was preempted by Indiana law and that the adoption of Section 8–20 constituted improper local legislation. Specifically, Town and Country had alleged in its complaint that, because the Indiana General Assembly delegated the responsibility of siting, construction, operation, closing, and monitoring of landfills in Indiana to the Indiana Department of Environmental Management ("IDEM") and the Indiana Solid Waste Management Board ("State Solid Waste Management Board"), the entire field of regulation and rulemaking on landfills was preempted. Accordingly, Town and Country contended that "[t]he enactment and subsequent enforcement of Section 8–20[was] in violation of the preemption over the entire field of regulation and control of the siting and construction of landfills in Indiana, which is vested with the [IDEM] and the [State Solid Waste Management Board.]" *Id.* at 31. In response, the Board of Commissioners and the BZA filed a cross-motion for partial summary judgment seeking a determination that the Board of Commissioners had the authority to adopt Section 8–20 because the Board of Commissioners may adopt zoning ordinances and the Local Solid Waste District Board has the statutory authority to consider the need for a landfill in LaPorte County.

On October 9, 2002, the trial court granted partial summary judgment to Town and Country and denied the Board of Commissioners' and the BZA's motion for partial summary judgment. The trial court's order provided, in pertinent part, as follows:

6. [Town and Country] is entitled to judgment as a matter of law for the following reasons:

a) the condition precedent to the [BZA's] consideration of a request for a special exception to operate a sanitary landfill or solid waste disposal facility—the determination of "need" and the satisfaction of the [Local Solid Waste District Board]—is preempted by state statutes which:

1) provide that the [IDEM] and its companion entity, [the State Solid Waste Management Board,] have been granted the authority [to] grant permits for the construction of solid waste management facilities [Ind.Code 13–15–3–1 et seq.,] to "establish requirements for the issuance of permits to control solid waste" [Ind.Code 31–15–1–3] and to determine the "need" that would be satisfied by the construction of a given solid waste facility. [Ind. Code 13–20–1–2, 3, and 4];

2) provide that "a unit [of local government] does not have" ... "[t]he power to regulate conduct that is regulated by a state agency, except as provided by statute." Ind.Code 36–1–3–8(7). *See Triple G. Landfills, Inc. v. Board of Comm'rs of*

*Fountain County,* 774 F.Supp. 528 (N.D.Ind.1991).

 b) The procedural condition precedent established by Section 8–20 in fact establishes the "second permit" requirement rejected in *Triple G Landfills, supra;*

 c) Those powers that are granted to local governmental units must be exercised in accordance with the statutory provisions that grant such authority. Ind.Code 36–1–3–6(a). Here, the imposition of a procedural condition precedent that precludes the [BZA] from *any consideration* of a special exception to establish a solid waste disposal facility contravenes the statutorily-defined role of the [BZA] [*See* Ind.Code 36–7–4–900 et seq.] and the language of the [Master Plan] itself which, consistent with state statute, "leave [ ] enforcement to the Building Commissioner, Plan Commission, or the [BZA.]" [Master Plan, Section 8–1.] In that respect, the abdication of that function of the [BZA] to the [Local Solid Waste District Board] via the condition precedent is not a zoning ordinance at all, notwithstanding its inclusion in the master zoning plan; accordingly, the [Board of Commissioners's and BZA's] reliance on *Pro–Eco, Inc. v. Board of Comm'rs of Jay County,* 956 F.2d 635 (7th Cir.1992) and *City of Crown Point v. Lake County,* 510 N.E.2d 684 (Ind.1987) and the proposition that zoning statutes are not subject to preemption via Home Rule provisions is without merit.

*Id.* at 7–9 (citations in brackets in original). The trial court entered final judgment on Count I on November 6, 2002.

 ■ The Board of Commissioners and the BZA appeal the trial court's grant of partial summary judgment to Town and Country, and its denial of their motion for partial summary judgment. The purpose of summary judgment is to end litigation where no factual dispute exists that may be determined as a matter of law. *Choung v. Iemma,* 708 N.E.2d 7, 11 (Ind.Ct.App. 1999), *reh'g denied.* When reviewing a trial court's grant of summary judgment, we apply the same standard as the trial court. *Georgetown Bd. of Zoning Appeals v. Keele,* 743 N.E.2d 301, 303 (Ind.Ct.App. 2001). Summary judgment should only be granted when the designated evidentiary material demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* (citing Ind. Trial Rule 56(C)). *Id.* We resolve all doubts about facts, or inferences therefrom, in favor of the party that opposed summary judgment. *Id.*

 ■ Where a trial court enters findings of fact and conclusions thereon in granting a motion for summary judgment, as the trial court did in this case, the entry of specific findings and conclusions does not alter the nature of our review. *Id.* Rather, in the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions thereon. *Rice v. Strunk,* 670 N.E.2d 1280, 1283 (Ind.1996). They merely aid our review by providing us with a statement of reasons for the trial court's actions. *Id.* In addition, "[t]he fact that the parties [made] cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Ind. Farmers Mut. Ins. Group v. Blaskie,* 727 N.E.2d 13, 15 (Ind.Ct.App.2000).

 ■ Because we are analyzing the language of Section 8–20 of the Master Plan, a brief review of our rules of statuto-

ry construction is also necessary to our analysis of this case. Interpretation of an ordinance is subject to the same rules that govern the construction of a statute. *Ragucci v. Metro. Dev. Comm'n of Marion County,* 702 N.E.2d 677, 681 (Ind.1998). The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used. *T.W. Thom Const., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 324 (Ind.Ct.App.1999). Accordingly, if the language of a statute is clear and unambiguous, it is not subject to judicial interpretation. *State v. Rans,* 739 N.E.2d 164, 166 (Ind.Ct.App.2000), *trans. denied.* However, when the language is reasonably susceptible to more than one construction, we must construe the statute to determine the apparent legislative intent. *Id.* Statutory provisions cannot be read standing alone; instead, they must be construed in light of the entire act of which they are a part. *Deaton v. City of Greenwood,* 582 N.E.2d 882, 885 (Ind.Ct.App. 1991).

 In addition, the interpretation of a statute is a question of law reserved for the courts. *Id.* We review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* Ordinances should be interpreted so as to uphold their validity whenever possible. *Id.*

## I.

 The first issue is whether the Board of Commissioners acted within its statutory authority when it adopted Section 8–20 of the Master Plan making Section 8–20 a zoning ordinance. The Board of Commissioners and the BZA argue that the trial court erroneously found that Section 8–20 was not a zoning ordinance. Section 8–20 of the Master Plan provides, in part, that:

A. A variance or special exception to place or develop a sanitary landfill or solid waste disposal facility may not be granted without the petitioner first providing to the [BZA] written approval from [Local Solid Waste District Board] as to the need for such sanitary landfill/solid waste disposal facility, and will meet (sic) the [Local Solid Waste District Board's] criteria. The petitioner must still meet the variance and special exception requirement of this Article.

Appellants' Appendix at 26.

The trial court determined that:

the imposition of this procedural condition precedent, which precludes the BZA "from *any consideration* of a special exception to establish a solid waste disposal facility contravenes the statutorily-defined role of the [BZA] … and the language of the [Master Plan] itself which, consistent with state statute, 'leave [ ] enforcement to the Building Commissioner, Plan Commission, or the [BZA.]' … In that respect, the abdication of that function of the [BZA] to the [Local Solid Waste District Board] via the condition precedent is not a zoning ordinance at all, notwithstanding its inclusion in the master zoning plan.

*Id.* at 8–9. Thus, the trial court found that Section 8–20 was not a zoning ordinance because its enactment exceeded the scope of the Board of Commissioners' authority. In so concluding, the trial court reasoned that because Section 8–20 imposes a procedural precedent that precludes the BZA from any consideration of a special exception to establish a solid waste disposal facility, Section 8–20 contravenes the statutorily defined role of the BZA and is, thus, not a zoning ordinance. We disagree.

Section 8–20 does not preclude the BZA from any consideration of a variance or special exception. Rather, by its plain language, Section 8–20 merely requires a petitioner who is seeking a variance or special exception to place or develop a sanitary landfill or solid waste disposal facility to first acquire written approval from the Local Solid Waste District Board regarding the need for such facility and that the proposed facility will meet the District's criteria.[1] However, nothing in Section 8–20 divests the BZA of its authority to ultimately grant or deny a variance or special exception. Indeed, Section 8–20 specifically provides that once the written approval from the Local Solid Waste District Board is obtained, "[t]he petitioner must still meet the variance and special exception requirement of this Article." *Id.* at 26.

The question then becomes whether the Board of Commissioners exceeded the scope of its authority by adopting Section 8–20, which requires a petitioner seeking to site and construct a landfill to obtain written approval from the Local Solid Waste District Board regarding the need of such facility and recognition that the facility will meet the District's criteria as a precondition to receiving a special variance or exception. The Board of Commissioners has the authority to regulate land use, including the use of land as a landfill. *See, e.g., City of Crown Point v. Lake County,* 510 N.E.2d 684, 686 (Ind. 1987). This authority "derives not from the general powers of counties, Ind.Code § 36–1–3–4, but from the planning and zoning statutes, such as Ind.Code §§ 36–7–4–503 and 36–7–4–601(b)." *Id.* When it adopts a zoning ordinance, the Board of Commissioners shall act for the purpose of, among other things, "promoting the public health, safety, comfort, morals, convenience, and general welfare." Ind.Code § 36–7–4–601(c)(3) (1998). In addition, Ind.Code § 36–7–4–601(d), provides, in relevant part, that:

> For the purposes described in subsection (c), the legislative body may do the following in the zoning ordinance:
>
> (1) Establish one (1) or more districts, which may be for agricultural, commercial, industrial, residential, special, or unrestricted uses and any subdivision or combination of these uses. . . .
>
> (2) In each district, regulate how real property is developed, maintained, and used. This regulation may include:
>
> * * * * *
>
> (B) requirements for site conditions, signs, and nonstructural improvements, such as parking lots, ponds, fills, landscaping, and utilities;
>
> * * * * *
>
> (J) any other provisions that are necessary to implement the purposes of the zoning ordinance.

Accordingly, the Board of Commissioners had the authority to adopt Section 8–20, which regulates or restricts the use of certain land as a landfill and requires that petitioners seeking to construct landfills obtain written approval from the Local Solid Waste District Board. Moreover, it is within the purview of the Local Solid Waste District Board to give written approval regarding the need for a landfill facility in LaPorte County and whether

---

**1.** At this stage of the case, there is nothing before us as to what "criteria" the Local Solid Waste District Board may have relevant to this case, and we make no decision as to what effect any such criteria may have.

such facility will meet the requirements of the District's criteria. *See infra* Part II.

The Board of Commissioners and the BZA further maintain that Section 8–20 "is a zoning ordinance because it affects and regulates the use of land." Appellants' Brief at 12. We agree. In *Pro–Eco v. Bd. of Comm'rs,* 776 F.Supp. 1368, 1371 (S.D.Ind.1990), *affirmed by* 956 F.2d 635 (7th Cir.1992), the federal district court found that: "The plain fact is that the ordinance is an attempt by the county to regulate the use of a piece of property. To say that this ordinance is not a zoning ordinance because it does not purport to regulate the county by districts is to ignore the general notion that an object of zoning is to regulate the use of land." Here, Section 8–20 clearly regulates the use of land. In particular, it restricts the use of land as a landfill. Because Section 8–20 restricts the use of land, it is a zoning ordinance and the trial court erred when it granted summary judgment to Town and Country on this issue.

The Board of Commissioners and the BZA also contend that the trial court erred when it found that the first sentence of Section 8–20 was invalid and unenforceable because it created a second permit process contrary to *Triple G. Landfills, Inc. v. Board of Comm'rs of Fountain County,* 774 F.Supp. 528 (N.D.Ind.1991). The ordinance at issue in *Triple G. Landfills* established a second permit application procedure at the county level that prospective landfill operators were required to initiate after receiving approval at the state level from IDEM. *Id.* at 529. The challenged ordinance also set forth standards and considerations for the siting, design, and operation of landfills. *Id.* The district court found that although the ordinance at issue was a zoning ordinance, it was invalid because it was enacted in the absence of a preexisting comprehensive zoning plan.

*Id.* at 532. Accordingly, the district court held that there was no express statutory authority for the ordinance and, because it conflicted with state law, it was preempted. *Id.* On appeal, the Seventh Circuit affirmed the decision of the district court, however, it only addressed the issue of whether the challenged ordinance was a proper zoning ordinance. 977 F.2d 287, 292 (7th Cir.1992).

As such, *Triple G. Landfills,* did not address whether a valid zoning ordinance can create a second permit procedure for the siting and construction of landfills. Accordingly, it is not authority for the proposition that a valid zoning ordinance creates an impermissible second-tier regulation. By statute, LaPorte County is in charge of local landfills and we are not presented here with a situation where the local legislation or zoning ordinance conflicts with IDEM's regulations.

## II.

■ The second issue is whether the Home Rule Act preempts the enactment of Section 8–20. The Home Rule Act, Ind. Code § 36–1–3–1 (1998), abrogated the traditional rule that local governments possess only those powers expressly authorized by statute and declared that a local government possesses "all other powers necessary or desirable in the conduct of its affairs." I.C. § 36–1–3–4(b)(2) (1998); *see also City of Crown Point,* 510 N.E.2d at 685. The Home Rule Act specifically provides, however, that a local governmental unit does not have the power to regulate conduct that is regulated by a state agency, except as expressly granted by statute. Ind.Code § 36–1–3–8(7) (1998).

Here, the trial court found that Section 8–20 was preempted by state statute because another state agency, i.e., IDEM, already had the authority to: (1) grant permits for the construction of solid waste

management facilities; (2) establish requirements for the issuance of permits to control solid waste; and (3) determine the need that would be satisfied by the construction of a given solid waste facility. However, we have previously determined that Section 8–20 is a zoning ordinance. *See supra* Part I. The authority to zone is the express authority to regulate. Accordingly, because zoning ordinances are the direct result of express statutory authority, they are not preempted by the Home Rule Act.[2] *See City of Crown Point,* 510 N.E.2d at 686.

. Pursuant to Section 8–18 of the Master Plan, before the BZA can grant a special exception for a landfill, it must find, among other things, that: "The establishment, maintenance, or operation of the special exception will not be detrimental to or endanger the public health, safety, or general welfare." Appellants' Appendix at 51. The BZA may grant the special exception if it "feels that the petitioner or applicant will comply with all statutory proceedings, permits, and applications not controlled by the Zoning Ordinance and development of such special exception as the [BZA] deems necessary and appropriate." *Id.*

The Local Solid Waste District Board, which is a creature of statute, has the express statutory power to:

> Except as provided in section 14.5 of this chapter, the powers of a district include the following:
>
> (1) The power to develop and implement a district solid waste management plan under IC 13–21–5.

* * * * *

> (5) The power to plan, design, construct, finance, manage, own, lease, operate, and maintain facilities for solid waste management.
> (6) The power to enter with any person into a contract or an agreement that is necessary or incidental to the management of solid waste. Contracts or agreements that may be entered into under this subdivision include those for the following:
> (A) The design, construction, operation, financing, ownership, or maintenance of facilities by the district or any other person.
> (B) The managing or disposal of solid waste.

* * * * *

> (16) The power to otherwise do all things necessary for the:
> (A) reduction, management, and disposal of solid waste; and
> (B) recovery of waste products from the solid waste stream;
> if the primary purpose of activities undertaken under this subdivision is to carry out the provisions of this article.

Ind.Code § 13–21–3–12.

The solid waste management plan is required to:

> establish a solid waste management policy for the district that reflects the needs of the district and provides an integrated approach to solid waste management that includes the following:

---

**2.** Town and Country argues that the Home Rule Act applies to this case because the Board of Commissioners adopted Section 8 20 and they are a "unit" as defined by the Home Rule Act. The Board of Commissioners and the BZA counter that the Home Rule Act does not apply to solid waste district board and, thus, does not apply to Section 8–20, citing *Worman Enter., Inc. v. Boone County Solid Waste Mgmt. Dist.,* 779 N.E.2d 565, 570 (Ind.Ct.App.2002), *trans. granted.* However, because we find that Section 8–20 is a zoning ordinance, we do not address this argument.

(1) Source reduction.

(2) Alternatives to complete or partial dependence on final disposal facilities, including recycling and composting.

(3) Final disposal facilities.

Ind.Code § 13–21–5–12(a). Such a plan may, "to the extent the provisions are constitutionally permissible, include provisions to restrict or prohibit the disposal within the district of solid waste originating from another state if the district reasonably considers the provisions necessary to accomplish the long range planning goals of the district." Ind.Code § 13–21–5–15. Local district plans are subject to approval by the Commissioner of the Department of Environmental Management. Ind.Code § 13–21–5–8 and –9.

It is clear that county solid waste management districts are an integral part of the overall state system for addressing, among other things, solid waste management and disposal. They are charged with assessing the needs of their respective districts and there is nothing that conflicts with the permitting function of IDEM in a county district determining if there is a need for a landfill in the district. One of the things that must be demonstrated to the Department is that there is a local or regional need for a proposed landfill. Ind. Code § 13–20–1–2. Consequently, it is not unreasonable for the zoning authority to require a needs assessment from the county solid waste management district before going further in its consideration of an application for a special exception to locate a landfill in its jurisdiction.

Moreover, to the extent that Section 8–20 regulates the use of certain land as a landfill, it is authorized by a combination of zonings laws and the establishment of districts. Accordingly, the Home Rule Act does not preempt the Board of Commissioners' ability to exercise its zoning power by adopting Section 8–20. Thus, the trial court erred by granting partial summary judgment to Town and Country and by denying partial summary judgment to the Board of Commissioners and the BZA on this issue.

For the foregoing reasons, we reverse the trial court's grant of partial summary judgment to Town and Country and its denial of partial summary judgment to the Board of Commissioners and the BZA and remand for proceedings consistent with this opinion.

Reversed and remanded.

BARNES, J., and FRIEDLANDER, J. concur.