**PRO–ECO, INC., Plaintiff,**

v.

**BOARD OF COMMISSIONERS OF JAY COUNTY, INDIANA, Defendant.**

**No. IP 89–577–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Sept. 20, 1990.

David V. Miller, Cedric Hustace, Robert Jeff Dodson, Bowers Harrison Kent & Miller, Evansville, Ind., for plaintiff.

Rosemary G. Spalding, Price & Shula, Indianapolis, Ind., Bradley K. Burkett, Whiteman Shappel & Burkett, Portland, Ind., for defendant.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

McKINNEY, District Judge.

The Plaintiff, Pro–Eco, and the Defendant, Board of Commissioners of Jay County, Indiana, have submitted this controversy to the Court on cross Motions for Summary Judgment. They have submitted stipulated facts. For the reasons stated below, the Court now GRANTS the Plaintiff's Motion and DENIES the Defendant's Motion.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

While these rules were formerly viewed with some hostility by the federal courts and were sparingly used in disposing of insufficient claims or defenses, *see, e.g., Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Supreme Court has instructed the district courts to follow the mandatory aspects of Rule 56 and enter summary judgment where appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The change in attitude has not gone unnoticed in the Seventh Circuit. *See e.g., Spellman v. Commissioners*, 845 F.2d 148, 152 (7th Cir.1988); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473 (7th Cir.1988), and must be followed by this district court where appropriate.

## I. FINDINGS OF FACT

Pro–Eco is an Indiana Corporation that came to Jay County, Indiana, with an interest in developing a parcel of land for use as a sanitary landfill. Pro–Eco purchased an option on a Jay County farm owned by Jack Fisher in September of 1988 for $10,000 in pursuance of that interest. In an effort to determine the suitability of the land for use as a sanitary landfill, Pro–Eco authorized expenditures for preliminary drilling and testing on the property.

In October, 1988, the Donan engineering firm was retained as consulting engineer on the project. Donan proceeded to gather the information necessary to the filing of the appropriate applications for the issuance of State permits to operate the landfill. These applications were to be presented to the Indiana Department of Environmental Management (IDEM), the agency

vested by the Indiana State Legislature with the authority to establish state-wide criteria for the environmentally safe operation of land fills.

Donan reviewed the results of the preliminary drilling and testing in October of 1988. It then developed a second, more extensive, plan for the testing of the parcel's suitability for use as a landfill. In November, 1988, Pro–Eco and its engineers at Donan met with IDEM in a preliminary attempt to apprise the State agency of their efforts and their intentions for the operation. Test results, maps, monitoring wells, and other planning data were shared with the agency. These preliminary efforts did not, as plaintiff acknowledges, amount to the filing of an application for the required permit.

In November of 1988 Pro–Eco and Donan entered into another contractual relationship whereby more extensive engineering efforts would be expended looking toward the filing of the Solid Waste Facility Permit Application. Pro–Eco hired Greenbaum Associates for the drilling and related tasks. The appropriate drilling and testing continued through the end of 1988 and through March of 1989. In February of 1989 Pro–Eco renewed its option to purchase the Fisher farm. The option this time cost $15,000. Prior to March 1989, Pro–Eco had spent, for various planning and testing services, the total amount of $214,349. It had also authorized various in-house expenditures in executive and employee time.

During the time that Pro–Eco was engaging in the described testing and evaluation of the land, Jay County did not have in force a comprehensive land use control or zoning ordinance. There is no evidence that plans for the implementation of any land use controls were under way prior to this time or that the possibility was being studied.

The Jay County Commissioners became cognizant of the activities of Pro–Eco sometime in early 1989. In several meetings held in February and March of 1989 the Board discussed its own and what it perceived was the public's concern with landfills. These discussions culminated in the duly promulgated ordinance over which the parties now litigate.

The ordinance in pertinent part reads as follows: [1]

Section 1. *Sanitary Landfill Moratorium.* As of the effective date of this ordinance and notwithstanding any ordinance to the contrary, no public or commercial landfill, as defined in the Indiana Administrative Code, Title 330, Article 4, Rule 2–1(38) as recodified in Title 320.1 of the Indiana Administrative Code, may be located, constructed or operated on any land located within Jay County prior to the occurrence of the earlier of the following events: (a) the adoption by the Jay County Commissioners of an area-wide land use management ordinance containing provisions for the regulation of sanitary landfills within Jay County, Indiana, or (b) three (3) years from and after the date of passage of this ordinance.

The ordinance in Section 2 establishes an Area Land Use Management Committee and empowers the Committee to study Jay County's need for area wide planning specifically focusing on sanitary landfills. The Committee was given the further responsibility of formulating its recommendations both on the need for county wide land use management and for the creation of a County plan commission. The committee was given 180 days to complete its task.

The ordinance further recognized a nexus between the public health, safety, and welfare of the citizens of Jay County and the regulation, location, construction, and operation of public commercial sanitary landfills. In addition the Commissioners expressed a concern that the operation of a sanitary landfill might create serious irreversible environmental damage.

1. The entire ordinance need not be set out. Any further citations to the text of the ordinance will appear during discussion in the body of the text.

As a direct result of the passage of the ordinance, Pro–Eco suspended its preparatory activities and those of its engineers and drilling contractors. By enacting the Ordinance the Jay County Board of Commissioners intended to prohibit the location, construction, or operation of any new public or commercial sanitary landfill in Jay County for three years or until the adoption of an area wide land use management ordinance containing provisions for the regulation of sanitary landfills within Jay County, whichever came first.

Pro–Eco purchased the property in question, notwithstanding the prior passage of the Ordinance and the uncertainty of Pro–Eco's ability to acquire a permit from the IDEM to construct and operate a sanitary landfill. The purchase was completed May 16, 1989.

## II. DISCUSSION

The issue is properly framed as follows: can a board of county commissioners, upon learning of the existence of plans by a private company to acquire a permit from the State to operate a sanitary landfill in its county, and at a time when no zoning or land use ordinance exists, put a moratorium on the further development of all new landfills until a comprehensive zoning plan can be developed and established or until the passage of three years, whichever comes first?

Plaintiff argues that the moratorium passed by the Board of Commissioners is a zoning ordinance in itself and as such was done in violation of Indiana law which clearly prohibits the passage of zoning ordinances without first passing a comprehensive zoning plan. The statute upon which the Plaintiff relies for this argument reads as follows:

§ 36–7–4–601(a) The legislative body having jurisdiction over the geographic area described in the zoning ordinance has exclusive authority to adopt a zoning ordinance under the 600 series. However, no zoning ordinance may be adopted until a comprehensive plan has been approved for the jurisdiction under the 500 series of this chapter.

Defendant argues first that the moratorium is not a prohibited zoning ordinance. It cites various definitions of "zoning" and concludes that the passing of the ordinance is not an exercise of the Board's power to zone.

Defendant also submits that there is statutory authority for its passage of the ordinance. That authority is the "Home Rule" Act of 1980. The "Home Rule" provision of § 36–1–3–3(b) provides that any doubt as to the existence of a power of a local governmental unit other than a township is to be resolved in the favor of the local governmental unit. The County cites I.C. 36–1–3–3(b) as follows: "Any doubt as to the existence of a power of a unit shall be resolved in favor of its existence." Therefore, the County concludes that if there is some doubt about the authority of the county to pass the ordinance the doubt should be resolved in its favor.

The initial issue, therefore, is whether this moratorium ordinance is in fact "zoning". If it is not a zoning ordinance the inquiry is over. If the Court determines that it is an exercise of the zoning power of the County then the authority for the action must be examined. Certainly if this expression of local government is a zoning ordinance then it was passed in contravention of the above statute as all agree that it was passed without the prior passage of a comprehensive plan.

■ Despite the County's argument to the contrary, the moratorium is a zoning ordinance. The plain fact is that the ordinance is an attempt by the county to regulate the use of a piece of property. To say, as does the County, that this ordinance is not a zoning ordinance because it does not purport to regulate the county by districts is to ignore the general notion that an object of zoning is to regulate the use of land. See 30 I.L.E. 635 Zoning. To say that an ordinance which furthers the goals of zoning is not a zoning ordinance is less than convincing.

■ Having determined that the moratorium is indeed a zoning ordinance the Court is compelled to find that it was passed in

contravention of I.C. 36–7–4–601(a). The Legislature has been very direct in its statement that no zoning is to be done without first passing in the appropriate statutory manner a comprehensive plan. That statutory manner which has been by-passed in this instance includes notice to the public and hearings inviting input from the public and affected parties. This ordinance was, as is stipulated by the parties, passed without benefit of that statutory scheme.

■ The County directs the Court's attention to the "Home Rule" act as set out above. The County wishes to take advantage of the provision that requires the Court to resolve issues of doubt of local government authority in favor of the existence of the authority. Looking further into the "Home Rule" act, at I.C. 36–1–3–6(a), it states "if there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." The zoning statute I.C. 36–7–4–100 *et seq.* is a statutory provision requiring a specific manner for exercising a power. There is, then, no doubt to resolve. The "Home Rule" act by its own terms does not apply to the issuance of this moratorium by the Jay County Commissioners. That power was exercised in this case contrary to the statute and therefore the plain meaning of the statute renders the zoning ordinance null and void.

Moratoriums by zoning bodies are not completely unheard of in the law. In *Schafer v. City of New Orleans,* 743 F.2d 1086 (5th Cir.1984), the City of New Orleans passed a moratorium on fast food restaurants in a particular area until such time as it could complete a study of the area or until the end of the year which was a 10 and one half month period of time. Therein the Court observed

> Interim development controls such as this moratorium have been found to play an important role in municipal planning. They aid in "bridging the gap between planning and its implementation into legal measures." [from 3 Rohan, Zoning and Land Use Controls, § 22.01 at 22–2]. They may, as here, be used to preserve the status quo while study of the area and its needs is completed. This morato-

rium on land use serves a significant public purpose.

The critical difference between the situation in *Schafer* and in the case at bar, however, is that the City of New Orleans did have a comprehensive zoning ordinance. In addition, New Orleans was not operating under the specific language of the Indiana statute.

The County cites other cases that find that the legislative body has the inherent authority to pass interim zoning ordinances. The County quotes extensively from *SCA Chemical Waste Services, Inc. v. Konigsberg,* 636 S.W.2d 430 (Tenn.1982), a representative case among this group. The Court finds that the operative words from that opinion are:

> Assuming that the municipality has the legislative authority to adopt such [interim] ordinances ...

*Id.* at 434–35.

None of the cases cited deal with Indiana's clear statutory scheme. In fact, some of these cases warn, as does *SCA Chemical,* that the interim ordinance can not stand unless the legislative authority to adopt the interim zoning is present. As the Court has discussed above, Indiana has chosen through its state statute to permit zoning only after a comprehensive plan has been duly promulgated by the local body.

The Court, therefore, concludes that action of the County in passing the moratorium is an unauthorized exercise of zoning power. The Court further concludes that Indiana's "Home Rule" act does not supply the authority for the Jay County Commissioner's action. The Court finds the moratorium invalid. The summary judgment motion of Plaintiff Pro–Eco, Inc. is GRANTED and the summary judgment motion of the Jay County Board of Commissioners is OVERRULED. The parties to pay their own costs.

ALL OF WHICH IS SO ORDERED.