**SAGAMORE PARK, Plaintiff,**

v.

**CITY OF INDIANAPOLIS, Metropolitan Development Commission of Marion County, Lawrence Bundles, Lillian Charelston, James J. Curtis, Jack H. Hall, Mary Ann Mills, Walter Niemczura, Steve Schaefer, Melvin Seitz, Randolph Snyder, individually, and as members of The Metropolitan Development Commission of Marion County, and City of Indianapolis Department of Metropolitan Development, Defendants.**

**No. IP 94–1153C.**

United States District Court, S.D. Indiana, Indianapolis Division.

Sept. 15, 1994.

Brian W. Welch, Philip A. Terry, McHale Cook & Welch, Indianapolis, IN, for plaintiff.

Dale R. Simmons, Office of Corp. Counsel, Indianapolis, IN, for defendants.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

This matter is before the Court on Plaintiff's Complaint for declaratory and injunctive relief. For the reasons stated below, Plaintiff's claim for declaratory relief is granted and the parties are instructed to meet on September 16, 1994, to determine whether Plaintiff still wishes and needs to assert its claim for injunctive relief.

## I. BACKGROUND

The material facts are not in dispute. Plaintiff, Sagamore Park, is a general partnership organized under the laws of the State of Indiana with its principal place of business to be located in Shelby County, Indiana. Plaintiff's primary business purpose is the development of a pari-mutuel racing network and other related entertainment activities in the State of Indiana.

Defendants have planning and zoning jurisdiction over the territory of Marion County, Indiana, at issue in this case. Specifically, Defendant Metropolitan Development Commission of Marion County ("MDC") is a government planning and zoning agency authorized, pursuant to Indiana Code § 36-7-4-802(c), to issue Improvement Location Permits ("ILPs") for the construction or alteration of improvements to property in Marion County.[1] The MDC is also authorized to delegate decision-making on ILP applications to Defendant City of Indianapolis Department of Metropolitan Development ("DMD"). Ind.Code § 36-7-4-802(c).

In 1989, the Indiana General Assembly enacted Public Law 341-1989(ss) (the "Act") creating the Indiana Horse Racing Commission ("IHRC") and authorizing pari-mutuel wagering on horse races in Indiana.[2] Pursuant to the Act, a horse racing meeting in which the pari-mutuel system of wagering is

---

1. The individual Defendants Lawrence Bundles, Lillian Charelston, James J. Curtis, Jack H. Hall, Mary Ann Mills, Walter Niemczura, Steve Schaefer, Melvin Seitz, and Randolph Snyder are members of the MDC. Throughout this Entry, unless otherwise noted, "MDC" refers to the Commission and its individual members.

2. The Act is codified at Ind.Code § 4-31-1 *et seq.*

conducted requires a permit issued by the IHRC. Ind.Code § 4–31–5–1. On October 21, 1993, the IHRC issued a Final Order granting Plaintiff a Permit to conduct a recognized pari-mutuel racing meeting at a site in Shelby County, Indiana (the "Permit"). The parties stipulate that the Permit was issued in accordance with the Act.

The Act also provides for the establishment and licensing of satellite wagering facilities. Ind.Code § 4–31–5.5–1 *et seq.* Satellite facilities are recreational facilities which, pursuant to regulation, will: have a minimum seating capacity of 400 persons; receive and display on multiple screens simulcast pari-mutuel horse races from live horse racing facilities in Indiana and elsewhere; have full dining service available to all patrons; and, display other sporting events on multiple screens during those times when pari-mutuel horse races are not being broadcast. Pursuant to regulations, patrons may engage in pari-mutuel wagering at satellite facilities.

On July 14, 1994, the IHRC issued a Final Order granting Plaintiff a license to own and operate a satellite facility at 3919 Lafayette Road, Room 800, Indianapolis, Indiana (the "License"), in an area near the Lafayette Square shopping mall (the "Indianapolis Satellite Facility"). The parties stipulate that the License was issued in accordance with the Act. Plaintiff timely accepted the conditions of the License.

At all relevant times, the Indianapolis Satellite Facility was classified as being within a "C–4" zoning district under the zoning ordinances for the Consolidated City of Indianapolis–Marion County, Indiana. Permitted uses within a C–4 District, include, but are not limited to, the following: adult entertainment business, hotel, motel, or tourist court, indoor commercial or recreational amusement establishments (which include bathhouse, bingo establishment, and firing (gun) range), massage parlor, and "other uses similar and comparable in character to the above permitted uses." [3]

Daniel T. Kozlowski, Director of the DMD sent a letter to Plaintiff dated April 14, 1994,

which outlined certain zoning considerations for the Indianapolis Satellite Facility:

> The Commercial Zoning Ordinance, 92–AO–4, as amended, provides for a wide variety of uses under the C–4 Classification. Specifically, as it relates to an off-track betting facility, ... the ordinance permits "indoor commercial or recreational amusement establishments." As you are probably aware, such a facility is not specifically included as one of the listed indoor commercial establishments since it has only recently been legalized by Indiana state law. To that end, the Department has prepared an amendment to the Zoning Ordinance that, if approved, would specifically list off-track betting facilities as a permitted indoor commercial or recreational amusement establishment under the C–4 classification provided that the total activity is conducted within enclosed buildings and at least 100 feet away from a protected district.

Kozlowski also explained that the amendment was scheduled for public hearing before the MDC at its April 20, 1994, meeting, and that if the MDC recommended approval, it would be scheduled for hearing before the City–County Council.

Plaintiff then received a letter dated June 3, 1994, from J. June Dugan, Administrator of the DMD. Dugan discussed the permissibility of satellite facilities within a C–4 District:

> [a]t the present time, the C–4 District would permit a satellite wagering facility as a use similar and comparable in nature to the indoor commercial or recreational amusement establishments listed in the C–4 District.

Dugan went on to explain the impact of a certain resolution which had been adopted by the City–County Council:

> [o]n May 23, 1994, however, the City–County Council adopted Resolution No. 67, 1994, which establishes a moratorium for the issuance of improvement location permits or zoning certifications for use of property for satellite wagering facilities. The moratorium is in effect until 90 days

---

3. A "special exception" as defined elsewhere in the ordinance is required for a massage parlor to

be permitted. However, none of the other uses listed above requires any special permission.

from the date of adoption of the Resolution.

Dugan also detailed the process of formulating possible amendments:

[t]he City–County Council has directed the staff of the ... [DMD] to work with a committee to propose amendments to the Commercial Zoning Ordinance regarding satellite wagering facilities. It is possible that the amendments will impose additional requirements on off-track betting facilities and may go so far as to require a public hearing before the Board of Zoning Appeals.

After Plaintiff received the license to develop the Indianapolis Satellite Facility from the IHRC, Plaintiff submitted an application for an ILP to the DMD on July 21, 1994. An improvement location permit ("ILP") is required prior to the alteration of any structure. Ind.Code § 36–7–4–801(b); Improvement Location Permit Ordinance of Marion County, Indiana, City–County General Ordinance No. 134. The purpose of the ILP requirement is to ensure that the new or renovated structure will comply with applicable zoning regulations.

Plaintiff's application for an ILP was denied by the DMD on July 21, 1994. Shortly thereafter, Dugan sent a letter to Plaintiff's attorney confirming the denial, in which she explained:

[a]lthough the site plans you submitted for review by the current planning staff are now in conformance with the development standard of the C–4 District, we have denied your permit request, do to City–County Council Resolution No. 67, 1994, which request that the Department refuse to grant an ILP for satellite wagering facilities for a period of 90 days, from May 23, 1994.

Resolution No. 67, 1994 (the "Moratorium") provides, in pertinent part:

SECTION 1. The City–County Council requests the ... [MDC], the Board of Zoning Appeals, and the ... [DMD] to establish a ninety (90) day moratorium on satellite wagering facilities and to refuse to take any action to grant or issue any rezoning petition, variance petition, ...

[ILP] or other certification or ruling that would allow the construction or operation of any satellite wagering facilities in Marion County.

Before the Moratorium was enacted, Plaintiff signed a seven (7) year lease for the Indianapolis Satellite Facility. Plaintiff has had to post a cash bond of one million dollars ($1,000,000.00) with the IHRC to guarantee Plaintiff's performance under the Permit. Without the bond and without a commitment from Plaintiff to the IHRC that Plaintiff will proceed with the development and operation of the Shelby County Track, IHRC will be authorized to revoke the Permit.

## II. DISCUSSION

This case has been submitted to the Court on the parties' stipulations of fact. Plaintiff claims it is entitled to declaratory judgment and preliminary and permanent injunctive relief in the form of a declaration that the Moratorium is invalid and unenforceable and a directive to the Defendants to issue Plaintiff's ILP and all other approvals to which Plaintiff is entitled by law. Plaintiff asserts its entitlement to this relief on the following bases: the Moratorium and its enforcement constitute a regulatory taking without just compensation in violation of the Fifth and Fourteenth Amendments and violate Plaintiff's substantive due process rights protected by the Fourteenth Amendment; the Moratorium violates the Commerce Clause because it imposes a burden on interstate commerce in horse racing completely out of proportion with any putative local benefits; the Moratorium is preempted by state law because the state has fully regulated this area; the Moratorium is *ultra vires* because Indiana zoning bodies are not empowered by state law to enact such moratoria; and, the Moratorium is invalid because it is a zoning ordinance which was not promulgated using procedures required by state law for the promulgation and amendment of zoning ordinances.

The Declaratory Judgment Act, 28 U.S.C. § 2201 provides:

[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate

pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's federal claims, and pendent jurisdiction over its state claims. There being an actual controversy, this Court may declare the rights being contested in the instant litigation.

"[I]t is well settled that federal courts should avoid addressing federal constitutional issues when it is possible to dispose of a case on pendent state grounds." *Triple G Landfills v. Board of Commissioners of Fountain County, Indiana,* 977 F.2d 287, 291 (7th Cir.1992) (citations omitted). It is possible to do so here.

Defendants argue that the Moratorium does not constitute a zoning ordinance. Instead, they contend that the Moratorium is simply a twofold "request," which DMD and MDC chose to honor. Defendants argue that the Moratorium first requests that the MDC pursue the statutory procedure to enact a zoning ordinance establishing a moratorium. Second, and totally separate according to Defendants, the Moratorium contains a request that the DMD and MDC "simply refuse to issue an ILP for 90 days ..., within which time the Council pledged ... to evaluate the zoning considerations for ... [satellite] facilities...." Defendants' Brief at 12.

■ Under Indiana law, " '[z]oning ordinance' refers to an ordinance adopted under the 600 series of ... [Ind.Code] 36–7–4 or under prior law." Ind.Code 36–7–1–22. In determining whether an ordinance constitutes an act of zoning, it is important to focus upon the practical effect of the ordinance. *Triple G Landfills,* 977 F.2d at 292.

The essential object of zoning regulations is to stabilize property uses and preserve the character of neighborhoods, and they may be intended to guide the future development of uses of land in certain areas and to protect such areas during transition periods in connection with anticipated future development.

30 I.L.E., *Zoning,* § 1, p. 635 (1960), *quoted in Pro–Eco, Inc.,* 956 F.2d at 638. When an ordinance constitutes an attempt by the government to regulate the use of a piece of property, it is an act of zoning. *Pro–Eco, Inc. v. Board Of Commissioners of Jay County, Indiana,* 776 F.Supp. 1368, 1371 (S.D.Ind.1990), *aff'd,* 956 F.2d 635 (7th Cir. 1992).

*Pro–Eco* and *Triple G Landfills* both involve attempts by Indiana counties to restrict the construction of landfills in their respective counties. In *Pro–Eco,* a moratorium was issued on the construction of landfills for three years or until such time as a comprehensive zoning plan could be developed and established. 956 F.2d at 636. In *Triple G Landfills,* a series of measures were enacted to restrict landfill construction, creating standards more stringent than those required to obtain a permit from the Indiana Department of Environmental Management ("IDEM"). In both cases, the Federal District Courts found, and the Seventh Circuit affirmed, that the ordinances were acts of zoning which had to be adopted pursuant to the steps set out in the 600 series of Ind. Code 36–7–4. Since neither ordinance had followed the requisite steps (indeed, neither had even enacted a comprehensive zoning plan as required by Ind.Code § 36–7–4– 601(a)), both ordinances were held to be invalid.

■ Likewise, the Moratorium is an act of zoning. Regardless of whether Defendants characterize it as a twofold request, its effect is the same: for a 90–day period no satellite facilities will be permitted to locate in the C– 4 District. The essence of the Moratorium seems to be preserving the status quo in the face of a previously untested land use. This is clearly an act of zoning.

As in *Triple G Landfills,* the parties here have stipulated that the Moratorium was not enacted in the manner zoning ordinances are required by statute to be enacted. Therefore, since the Moratorium is in fact a zoning ordinance it is void and unenforceable.

■ The Moratorium being void, Plaintiff is entitled to have its ILP application reviewed in light of the valid enforceable ordi-

nances in effect on the date of the application. *See Board of Zoning Appeals of the City of Fort Wayne v. Shell Oil Co.,* 164 Ind.App. 497, 329 N.E.2d 636, 642 (1975); *Knutson v. State ex rel. Seberger,* 239 Ind. 656, 160 N.E.2d 200, 201 (1959). That is, if a satellite wagering facility would have been a permissible C–4 District use at the time of Plaintiff's ILP application, absent the Moratorium, then Plaintiff is entitled to have its ILP application granted.

As noted above, the correspondence Plaintiff received from June Dugan, Administrator of the DMD, conveys an opinion that the Moratorium was the only thing standing in the way of an ILP for Plaintiff. Dugan specifically states:

> [a]t the present time, the C–4 District would permit a satellite wagering facility as a use similar and comparable in nature to the indoor commercial or recreational amusement establishments listed in the C–4 District.

However, the language of the Moratorium itself references some confusion on this issue:

> Differences of opinion exist as to whether any current zoning classifications include satellite facilities under IC 4–31–5.5 (hereinafter satellite wagering facilities) as a permitted use. . . .

Therefore, this Court must examine the C–4 zoning classifications to determine whether a satellite facility is a permissible use.

The Commercial Zoning Ordinance was last adopted by the City–County Council on August 2, 1993, and was ratified by the MDC on August 18, 1993. Although this adoption and ratification took place almost a year after pari-mutuel wagering at satellite facilities became lawful in Indiana, the Ordinance is silent as to satellite facilities (*i.e.,* satellite facilities are neither expressly permitted nor prohibited). The Ordinance does, however, specifically permit adult entertainment businesses, hotels, motels, or tourist courts, indoor commercial or recreational amusement establishments (which include bathhouses, bingo establishments, and firing (gun) ranges), massage parlors, and "other uses

similar and comparable in character to the above permitted uses."

Defendants argue that satellite facilities are not "similar and comparable in character" to the permitted uses. Defendants contend that since off-track betting only became legal in 1992 it could not have been contemplated by existing zoning laws. According to Defendants, "gambling" is an "entirely new and different use not contemplated by the Zoning Ordinance at all." Defendants' Brief at 10. Defendants also invoke the language of the Indiana Code in which local planning entities are encouraged to exercise zoning powers to create "residential areas [which] provide healthful surroundings for family life." *Id.* (quoting Ind.Code § 36–7–4–201).

■ Unfortunately for Defendants, their prior zoning decisions indicate that a satellite facility is permissible as a similar and comparable use. Contrary to Defendants' assertions, gambling is not new—bingo establishments, for instance, are explicitly permitted in the Ordinance. As for Defendants' concern for the moral character of the permissible uses, such concern did not prevent adult entertainment, bathhouses, and massage parlors from being accepted as permissible uses. Given the uses that are already permissible, this Court finds satellite facilities also to be permissible under the Zoning Ordinance.

### III. CONCLUSION

For the reasons stated above, Plaintiff's request for declaratory relief is GRANTED.[4]

It is not clear whether Plaintiff is still requesting a preliminary injunction (Plaintiff's Reply Brief is silent on this issue). In any event, Plaintiff has not fully complied with the provisions of Local Rule 65.1 concerning prerequisites for obtaining a preliminary injunction. It is also not clear how the Defendants intend to respond to this ruling and, accordingly, whether any injunctive relief is still necessary. Therefore, the parties are hereby ORDERED to meet on or before September 16, 1994, to discuss these issues.

---

4. Having decided the case on one of Plaintiff's state claims, it is unnecessary to address Plaintiff's remaining state and federal claims.

If, after the meeting, Plaintiff still wishes to request injunctive relief, such a motion should be formally made to the Court.

It is so ORDERED.