**THE CITY OF CARMEL, Indiana, Appellant–Defendant,**

v.

**MARTIN MARIETTA MATERIALS, INC., Appellee–Plaintiff.**

No. 29A04–0506–CV–358.

Court of Appeals of Indiana.

July 5, 2006.

 

 

 

 

 
 

 

 
 
 

 
 
 
 

Alan S. Townsend, Paul D. Vink, Bose McKinney & Evans LLP, Indianapolis, IN, Attorneys for Appellant.

Thomas E. Mixdorf, Zeff A. Weiss, Abigail B. Cella, Ice Miller LLP, Indianapolis, IN, H. Wayne Phears, Phears & Moldovan, Norcross, GA, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary

The City of Carmel, Indiana, ("Carmel") appeals the trial court's grant of a preliminary injunction in favor of Martin Marietta Materials, Inc. ("Martin Marietta"), enjoining enforcement of Carmel's Ordinance No. D–1686–04 As Amended: An Ordinance of the Common Council of the City of Carmel, Indiana, to Regulate Mining Operations within the Corporate Boundaries of the City of Carmel ("Amended Ordinance"). Carmel disputes that Martin Marietta established the factors necessary for issuance of a temporary injunction by the trial court. As a matter of first impression, we decide that Carmel's governmental immunity from damages liability results in irreparable harm due to the lack of an adequate legal remedy. Further-

more, Carmel may not invoke its general police power to circumvent the planning process as delineated by the legislature. Therefore, we conclude that the trial court did not err in granting the preliminary injunction, and we affirm.

*Issue*

Carmel raises two issues for review, which we consolidate and restate as whether the trial court properly issued a preliminary injunction prohibiting Carmel from enforcing the Amended Ordinance.

*Facts and Procedural History* [1]

For over two decades, Martin Marietta has engaged in mining, processing, and selling sand, gravel, and limestone within Carmel's corporate limits. It is Carmel's sole sand and gravel mining operation. These are conducted at surface level while its limestone operation is conducted on the surface and underground. Martin Marietta's two Carmel facilities are located in the vicinity of 106th Street and Hazel Dell Parkway as well as 96th Street and Hazel Dell Parkway. These include a quarry, an underground mine, and sand and gravel pits. The company has several other facilities within Indiana, and hundreds across the United States.

In the years prior to the pending litigation, Carmel increasingly received complaints about Martin Marietta largely due to an increase in residential properties near Martin Marietta's operations. On July 22, 2003, Carmel enacted an ordinance imposing regulations and reporting requirements on mining activity within the city's corporate limits. Martin Marietta challenged the ordinance in part because the Carmel Plan Commission did not provide recommendations prior to its enactment, as required by state statute. On

October 20, 2003, the trial court enjoined enforcement of the ordinance. Carmel did not appeal the injunction, and repealed the original ordinance in February of 2004. Carmel then redrafted the ordinance, eventually enacting the Amended Ordinance on April 18, 2005. As with the original ordinance, the Carmel Plan Commission did not provide recommendations for the Amended Ordinance.

The Amended Ordinance's introductory clauses state:

> **WHEREAS,** mining and the processing of mineral resources should give due regard to (1) the protection of the health, safety and general welfare of the people, (2) the prevention of erosion, stream pollution, water, air and land pollution; and (3) the prevention of negative impact to the City's water supply and other injurious effects to persons, property, wildlife and natural resources; and
>
> **WHEREAS,** the Common Council of the City of Carmel finds that, for the protection of the public health, safety and welfare of the citizens of Carmel, to mitigate the negative impacts of mining and processing of mineral resources on those citizens who reside adjacent to or near such operations, and to maintain an environmentally sound and stable mining and processing industry, it is reasonable and necessary to regulate mining operations as provided in this Ordinance.

Appendix to Brief of Appellant at 76 (emphasis in original). Provisions in the Amended Ordinance regulate many aspects of mining, including water and air quality, lateral support for underground tunnels, stockpiles, slope of excavation, fencing, hours of operation, erosion and

---

**1.** We held oral argument on May 9, 2006, and thank counsel on both sides for an insightful discussion of the issues.

dust control, the handling of explosives, and blasting practices. An administrator is given authority to enforce the provisions of the ordinance and to issue or renew mining permits.

After enactment of the Amended Ordinance, Martin Marietta filed an amended complaint seeking a preliminary injunction. The trial court held an expedited hearing, and on May 17, 2005, entered a temporary restraining order preventing enforcement of the Amended Ordinance pending a decision on the preliminary injunction. The trial court subsequently issued its findings of fact and conclusions of law on May 26, 2005, lifting the temporary restraining order and granting Martin Marietta's request for a preliminary injunction against Carmel. Carmel timely appealed the grant of a preliminary injunction, and further proceedings were stayed pending this appeal.

### Discussion and Decision

### I. Standard of Review

■■■■ The grant or denial of a preliminary injunction is within the trial court's discretion, and the scope of our review is limited to whether the trial court has clearly abused its discretion. *Aberdeen Apartments v. Cary Campbell Realty Alliance, Inc.*, 820 N.E.2d 158, 163 (Ind.Ct. App.2005), *trans. denied.* If the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or if the trial court misinterprets the law, an abuse of discretion has occurred. *Id.* The trial court is required by Indiana Trial Rule 52(A) to make special findings of fact and conclusions of law when determining whether to grant a preliminary injunction. *Id.* These findings and conclusions are reviewed to ascertain if they support the trial court's judgment, which we will reverse only when clearly erroneous. *Id.* We will consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Id.*

### II. Preliminary Injunction

■■■■ Preliminary injunctions are generally used to preserve the status quo as it existed before a controversy, pending a full determination on the merits of the controversy. *U.S. Land Servs., Inc. v. U.S. Surveyor, Inc.*, 826 N.E.2d 49, 67 (Ind.Ct.App. 2005). It is well settled that a trial court's use of discretion when granting a preliminary injunction is measured by several factors, including:

(1) whether the plaintiff's remedies at law are inadequate, thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue; (2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant; and (4) whether, by the grant of the preliminary injunction, the public interest would be disserved.

*Id.* It is the moving party's burden to show entitlement to injunctive relief by establishing each of these factors by a preponderance of the evidence. *Id.* We note that the "power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances where the law and facts are clearly in the moving party's favor." *Id.* To this end, "[i]f the movant fails to prove even one of these requirements, the trial court's grant of an injunction is an abuse of discretion." *Titus v. Rheitone*, 758 N.E.2d 85, 91 (Ind.Ct.App.2001), trans. denied. Carmel asserts that Martin Marietta failed to meet its burden on all four required elements.

## A. Inadequacy of Remedies at Law and Irreparable Harm

To be adequate, a legal remedy must be "plain and complete and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity." *McKain v. Rigsby*, 250 Ind. 438, 444, 237 N.E.2d 99, 103 (1968). The ability to obtain damages in the form of a money judgment for economic injury generally represents an adequate remedy at law. *Indiana Family & Soc. Servs. Admin., Div. of Family and Children, Lake County Office v. Ace Foster Care and Pediatric Home Nursing Agency Corp.*, 823 N.E.2d 1199, 1204 (Ind.Ct.App.2005). "A party suffering mere economic injury is not entitled to injunctive relief because damages are sufficient to make the party whole." *Family & Social Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 162 (Ind.2002). While this is generally true, where a specific dollar amount for losses cannot be ascertained, therefore making any money damages purely speculative, a preliminary injunction is the most efficient way to lift the burden of harm. *Norlund v. Faust*, 675 N.E.2d 1142, 1150 (Ind.Ct.App.1997), *clarified on denial of reh'g*, 678 N.E.2d 421 (Ind.Ct.App.1997), *trans. denied.*

When issuing the preliminary injunction, the trial court made its determination with an eye toward the specificity and certainty of the potential injury facing Martin Marietta through the costs of compliance, or a failure to fully comply, with the Amended Ordinance's provisions. The trial court performed "this additional analysis because 'a party which suffers economic injury that cannot be remedied by post-trial damages is entitled to injunctive relief.'" App. to Br. of Appellant at 12–13 (quoting *Jay County Rural Elec. Membership Corp. v. Wabash Valley Power Assn., Inc.*, 692 N.E.2d 905, 909 (Ind.Ct.App.1998), *trans. denied*). The trial court concluded that the immediate expense to Martin Marietta was significant and indefinite, probably exceeding $1 million. The trial court also considered that Carmel would likely force Martin Marietta to halt operations, compounding its expenses, for failure to fully comply with the Amended Ordinance within the requisite timeframe. From this, the trial court determined that Martin Marietta had successfully shown an inadequate remedy at law sufficient to support a preliminary injunction. It explained:

> The determinative point is not that the amount of damages [Martin Marietta] would suffer is relatively large, or that the company faces a legitimate risk of having its operations totally shut down (thereby causing another large economic injury); instead, what matters is that the amount of economic injury in either scenario cannot be ascertained with any meaningful specificity.

App. to Br. of Appellant at 14.

On appeal, Carmel argues that the trial court's rationale was erroneous. Carmel relies on *Indiana State Bd. of Public Welfare v. Tioga Pines Living Ctr., Inc.*, 575 N.E.2d 303 (Ind.Ct.App.1991), *trans. denied*, and *Indiana State Dept. of Welfare, Medicaid Division v. Stagner*, 410 N.E.2d 1348 (Ind.Ct.App.1980), for the proposition that mere economic injury is insufficient to warrant issuance of a preliminary injunction. Yet, neither case controls in this instance because each involved relatively quantifiable or precise amounts representing economic harm. Specifically, *Tioga Pines* involved alleged economic harm derived from a change in the statewide Medicaid reimbursement rate for nursing homes, and *Stagner* involved an injunction ordering payment of $135,160.00. These cases are therefore distinguishable on the facts, and we therefore do not apply the

rationale of those cases to the matter at hand.

Carmel disagrees that Martin Marietta could not ascertain its damages with specificity and certainty. Although acknowledging "Martin Marietta may not know with certainty **at this time**" its total cost of compliance, Carmel argues this is because Martin Marietta elected to challenge the Amended Ordinance prior to attempting compliance. Amended Brief of Appellant at 33 (emphasis in original). Secondly, Carmel does not dispute the power vested in the Amended Ordinance's administrator,[2] or that this authority may be utilized to suspend Martin Marietta's operations should it fail to comply. Economic injury would clearly accompany such a forced cessation of operations.

■ We disagree that Martin Marietta must first attempt compliance, accruing quantifiable damages and risking suspension of its operations, before challenging the ordinance. It is irrelevant that a party able to demonstrate some economic loss is unable to quantify the loss. *Robert's Hair Designers, Inc. v. Pearson*, 780 N.E.2d 858, 865 (Ind.Ct.App.2002). The irreparable injury requirement does not demand that Martin Marietta point to specific losses. *Id.* at 864. As such, Martin Marietta has satisfied the requirement of showing irreparable harm absent a preliminary injunction.

More importantly, we agree with the trial court's determination that even if Martin Marietta suffered easily quantifiable economic injuries, it otherwise demonstrated a lack of adequate legal remedy, and thus irreparable harm, due to Carmel's governmental immunity. Under Indiana Code section 34–13–3–3(8)[3] Carmel is immune from liability for damages resulting from the adoption or enforcement of the Amended Ordinance, and under Indiana Code section 34–13–3–3(11),[4] for any alleged injuries arising from the permitting process required by the Amended Ordinance. Martin Marietta is thus without legal recourse for any economic injury—no matter how specific—resulting from the Amended Ordinance.

■ As a matter of first impression in this state, we hold that governmental immunity from damages liability for economic injuries supports a finding of irreparable harm in claims for injunctive relief. *See Smith v. City of Hammond*, 388 F.3d 304, 307 (7th Cir.2004) ("[I]n some cases it might be argued that a defendant's immunity from damages liability might constitute irreparable harm entitling the plaintiff to preliminary relief."); *Kansas Health Care Assn. v. Kansas Dept. of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543 (10th Cir.1994) (holding Eleventh Amendment immunity supports finding of irreparability

---

**2.** This power includes the ability to "order an immediate suspension of any [mining] Operation upon any repeated or willful violation of any of the provisions of this Article, or when there is an imminent threat of substantial harm to citizens of the City, natural resources, property, or the City's water supply." App. to Br. of Appellant at 11.

**3.** This subsection provides a governmental entity or an employee acting within the scope of the employee's employment with immunity from liability if a loss results from "[t]he adoption and enforcement of or failure to adopt or enforce a law (including rules and

regulations), unless the act of enforcement constitutes false arrest or false imprisonment."

**4.** This subsection provides a governmental entity or an employee acting within the scope of the employee's employment with immunity from liability if a loss results from "[t]he issuance, denial, suspension, or revocation of, or failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization, where the authority is discretionary under the law."

of economic harm caused by state officials acting in their official capacities) (citing *Temple Univ. v. White,* 941 F.2d 201, 215 (3rd Cir.1991), *cert. denied,* 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992) ("As to the inadequacy of legal remedies, the Eleventh Amendment bar to an award of retroactive damages against the [state] clearly establishes that any legal remedy is unavailable and the only relief available is equitable in nature.") (citation omitted)). Where a shield of immunity protects a governmental entity that inflicts economic injury upon a party, thereby preventing an adequate remedy in law, equity demands the availability of injunctive relief.

Carmel does not dispute its immunity from liability under Indiana Code sections 34–13–3–3(8) and 34–13–3–3(11), and has retained immunity as an affirmative defense in any future litigation. Instead, Carmel argues "unadjudicated claims of immunity at the preliminary injunction stage do not warrant a finding of irreparable harm." Am. Br. of Appellant at 35. It relies on *Ace Foster Care,* 823 N.E.2d 1199, to support this contention.

There, the trial court granted *Ace Foster Care* ("Ace") a preliminary injunction requiring the Indiana Family and Social Services Administration ("FSSA") to contract with Ace. We reversed the injunction, finding that an adequate legal remedy existed for any damages alleged by Ace. *Id.* at 1204. As one argument on appeal, Ace asserted that "its remedies at law would be inadequate if FSSA [was] entitled to 'immunity from damages,' as FSSA had alleged in its answer to Ace's complaint." *Id.* at 1205 n. 7 (citation omitted). Addressing this concern in a footnote, we explained that it was premature because, "[a]bsent a determination of FSSA's immunity, Ace's unsupported assertion [fell]

far short of the preponderance of the evidence necessary to sustain its burden." *Id.*

In the present case, Carmel relies upon this language, categorizing it as the only guidance in Indiana case law on the relationship between governmental immunity and potential irreparable harm due to an inadequate remedy at law. However, in *Ace Foster Care,* it was unclear whether governmental immunity would be raised. The trial court had not ruled on whether FSSA had immunity, or the extent to which any immunity prevented its liability for resulting damages. The present circumstances are distinguishable. The trial court explicitly asked Carmel whether immunity would be an issue, as it had been during the preliminary injunction determination for the original ordinance when Carmel refused to waive immunity under Indiana Code section 34–13–3–3. Carmel responded that the issue "has not changed." *Id.* at 81. Carmel reaffirmed its position during oral argument before this court. Thus, both the trial court and this court have determined that if Carmel prevails on its theory of statutory immunity it will be shielded from liability, and we are reasonably certain that Carmel's immunity, and any protection it provides, will be at issue in any future litigation of the pending matter.[5]

Because of Martin Marietta's inability to ascertain specific and certain economic damages, as well as the unwaived immunity shielding Carmel from damages liability, we cannot say that the trial court abused its discretion in finding that Martin Marietta satisfied its burden of establishing the lack of an adequate remedy at law resulting in irreparable harm.

**5.** Regardless of the weight accorded to the footnote in *Ace Foster Care,* its meaning is

inapplicable to the case at hand, which is factually distinguishable.

**B. Reasonable Likelihood of Success**

A plaintiff need only show a prima facie case on the merits in order to successfully make a case for a preliminary injunction. *Avemco Ins. Co. v. State ex rel. McCarty*, 812 N.E.2d 108, 118 (Ind.Ct. App.2004). A party is not required to show entitlement to relief as a matter of law, nor to prove and plead a case that would entitle it to relief upon the merits. *Id.* To meet this burden, Martin Marietta must overcome a strong presumption that the Amended Ordinance is valid. *Chemical Waste Mgmt. of Ind., L.L.C. v. City of New Haven*, 755 N.E.2d 624, 633 (Ind.Ct. App.2001). The trial court held that Martin Marietta showed a reasonable likelihood of success by establishing a prima facia case that Carmel failed to enact the Amended Ordinance in accordance with the state statutes empowering Carmel to regulate mining within its corporate limits. Specifically, although statutorily required to do so, the Carmel Plan Commission did not make recommendations prior to enactment of the Amended Ordinance.

To reach this conclusion, the trial court employed statutory construction. When construing statutes, a court's function is to determine and give effect to the legislative intent behind enactment of the provisions. *Simon Prop. Group, L.P. v. Brandt Const., Inc.*, 830 N.E.2d 981, 994 (Ind.Ct.App.2005), *trans. denied.* "So long as two statutes can be read in harmony with one another, we presume that the Legislature intended for them both to have effect." *Burd Mgmt., LLC v. State*, 831 N.E.2d 104, 108 (Ind.2005). "[W]e recognize a strong presumption that when the legislature enacted a particular piece of legislation, it was aware of existing statutes relating to the same subject." *Poehlman v. Feferman*, 717 N.E.2d 578, 582 (Ind.1999). Upon review, because issues of statutory construction pose questions of law, we apply a *de novo* standard of review. *Vanderburgh County Election Bd. v. Vanderburgh County Democratic Cent. Comm.*, 833 N.E.2d 508, 510 (Ind.Ct.App. 2005).

Here, the Amended Ordinance was not construed, but two arguably controlling statutes giving Carmel the authority to enact it were interpreted. The rule most central to the trial court's determinations was that where two statutes govern the same subject matter but cannot be harmonized, the statute dealing with the subject in a more detailed or specific manner governs over the statute dealing with the same subject in a general manner. *Wayne Twp. of Allen County v. Hunnicutt*, 549 N.E.2d 1051, 1053 (Ind.Ct.App. 1990), *trans. denied.*

The statutes implicated are Indiana Code section 36–8–2–4 ("police power statute") and Indiana Code section 36–7–2–6 ("mining statute"). Both confer authority upon a county, municipality, or township, denominated in this context as a "unit." Ind.Code § 36–1–2–23. The police power statute states, "A unit may regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare." Ind.Code § 36–8–2–4. The mining statute states, "A unit may regulate excavation, mining, drilling, and other movement or removal of earth below ground level." Ind.Code § 36–7–2–6. The trial court found these statutes to conflict, and therefore held that the specific grant of power to regulate mining controlled over the general police powers accorded to Carmel.

Carmel asserts that the trial court violated rules of statutory construction by finding that Indiana Code sections 36–8–2–4 and 36–7–2–6 conflict. Specifically, Carmel argues that an attempt must first be made to harmonize the statutes before re-

sorting to a construction favoring a specific statute over a general one. To this end, Carmel suggests that the police power statute provides a separate source of authority to regulate land use alternative to that provided by the mining statute. This disassociates the legislature's grant of police power to Carmel from the authority given to it for regulation of mining. Inherent in this assertion is the argument that the Amended Ordinance enacted by Carmel does not fall within the rubric of zoning, but is rather an exercise of separate and distinct police power, therefore not requiring recommendations from the Carmel Plan Commission prior to enactment. We disagree that Carmel may invoke its general police power to circumvent the planning process.

Indiana Code section 36–7–1–22 defines a zoning ordinance as "an ordinance adopted under the 600 series of [Indiana Code] 36–7–4 or under prior law." Indiana Code section 36–7–4–601(d)(1) clarifies that legislative bodies use zoning ordinances to establish districts for particular land uses, such as agriculture, commerce, industry, or residence. But beyond simple classification, zoning ordinances also "regulate *how* real property is developed, maintained, and used" in each district. Ind.Code § 36–7–4–601(d)(2) (emphasis added). A zoning ordinance may include a number of provisions to regulate how land is used, including:

(A) requirements for the area of front, rear, and side yards, courts, other open spaces, and total lot area;

(B) requirements for site conditions, signs, and nonstructural improvements, such as parking lots, ponds, fills, landscaping, and utilities;

(C) provisions for the treatment of uses, structures, or conditions

that are in existence when the zoning ordinance takes effect;

(D) restrictions on development in areas prone to flooding;

(E) requirements to protect the historic and architectural heritage of the community;

(F) requirements for structures, such as location, height, area, bulk, and floor space;

(G) restrictions on the kind and intensity of uses;

(H) performance standards for the emission of noises, gases, heat, vibration, or particulate matter into the air or ground or across lot lines;

(I) standards for population density and traffic circulation; and

(J) any other provisions that are necessary to implement the purposes of the zoning ordinance.

Ind.Code § 36–7–4–601(d)(2).

Yet Carmel argues that the Amended Ordinance should not be considered a de facto zoning ordinance merely because it regulates the use of land. This definition, Carmel suggests, is too broad and ignores a critical difference between a zoning ordinance and a police power ordinance:

A zoning ordinance concerns **what** activity is permitted on a particular piece of property while a police power ordinance regulates **how** an activity is permitted. Stated differently, while a zoning ordinance declares certain uses permissible or impermissible in certain areas, a police power ordinance declares how permitted activities must be conducted to ensure that public health, safety and welfare are not jeopardized.

Am. Br. of Appellant at 22 (emphasis in original). Carmel's definitions do not directly parallel the language of the Indiana Code describing a zoning ordinance as

both establishing permitted uses through districting of property, and also regulating how property is used. *See* Ind.Code §§ 36–7–4–601(d)(1) and (2).

■ It is clear from the plain language of the Amended Ordinance that it affects and regulates the land use of mining, and is therefore a zoning ordinance.[6] *Board of Comm'rs of LaPorte County v. Town & Country Utilities, Inc.*, 791 N.E.2d 249, 255 (Ind.Ct.App.2003), *trans. denied,* ("Because Section 8–20 restricts the use of land, it is a zoning ordinance . . . ."); *see also Pro–Eco, Inc., v. Board of Comm'rs of Jay County, Indiana,* 776 F.Supp. 1368, 1371 (S.D.Ind.1990), *aff'd,* 956 F.2d 635 (7th Cir.1992) ("The plain fact is that the ordinance is an attempt by the county to regulate the use of a piece of property . . . . [which reflects] the general notion that an object of zoning is to regulate the use of land. To say that an ordinance which furthers the goals of zoning is not a zoning ordinance is less than convincing."). Instead of being a separate alternative to the use of police power, zoning powers are included among police powers that must be exercised for the public health, safety, and welfare. This is in accord with our previous determination that "[t]he statutory scheme governing the powers of zoning boards focuses upon the legitimate ends of zoning regulation as an exercise of the police power of the state, which can only be exercised in the general public interest of safety, health, and morals." *Elkhart County Bd. of Zoning Appeals v. Earthmovers, Inc.*, 631 N.E.2d 927, 930 (Ind.Ct.

App.1994), *trans. denied,* (internal quotation and citation omitted); Ind.Code § 36–7–4–201 (describing the purpose of the chapter as encouraging improvements for the health, safety, convenience, and welfare of citizens); Ind.Code § 36–7–4–601 (including the promotion of public health, safety, comfort, morals, convenience, and general welfare as one of several purposes for adoption of a zoning ordinance).

Carmel relies on *Irving Materials, Inc. v. Board of Comm'rs of Johnson County* to bolster its assertion that "[s]tatutes relating to the same general subject matter are in pari materia and should be construed together" where possible, and "in connection and in harmony with the existing law and as part of a general and uniform system of jurisprudence." 683 N.E.2d 260, 262 (Ind.Ct.App.1997), *trans. denied.* The issue presented in *Irving Materials* was whether Johnson County could regulate extraction of minerals in a non-urban setting where mining was to take place in a flood plain. Two seemingly conflicting statutory schemes were implicated, one generally prohibiting the regulation of use or alienation of mineral resources in non-urban settings, and the second specifically empowering flood plain management through local zoning ordinances. We reconciled the statutes by construing the specific grant of power to regulate land use in a flood plain as "an exception to the rule that prohibits a county from regulating mineral extraction in non-urban areas." *Id.* at 263.

**6.** Carmel notes that non-zoning police powers can be utilized when regulating some instances of land use. *See Starzenski v. City of Elkhart,* 659 N.E.2d 1132, 1140 (Ind.Ct.App. 1996), *cert. denied,* 519 U.S. 1028, 117 S.Ct. 582, 136 L.Ed.2d 512 (1996) (affirming city's abatement of nuisance posed by trash and debris on private property to protect health and safety of public); *Mathys v. City of Berne, Inc.*, 501 N.E.2d 1142, 1146 (Ind.Ct.App.

1986) (affirming grant of injunction against storage of inoperable vehicles and parts within city limits as prohibited by nuisance ordinance). These cases are distinguishable, however, because they concern the exercise of general powers concerning public safety found in Title 36, Article 8 of the Indiana Code, rather than the exercise of general powers concerning planning and development, found in Title 36, Article 7.

In the present case, Carmel attempts to analogize *Irving Materials,* claiming that although the mining statute prohibits the Carmel City Council from regulating mining without recommendations from the Carmel Plan Commission, the police power statute provides "an alternative source of authority to regulate mining," and thus, "an exception to that prohibition." Am. Br. of Appellant at 16. Carmel argues that "[t]here is nothing inherently conflicting about the concept that both a local zoning body and a municipal city council have jurisdiction over a particular subject matter [that] ... may pose a significant threat to the health, safety, and welfare of a community." *Id.* at 13.

We agree that, where possible, statutes must be harmonized. Therefore, to the extent that the trial court concluded the two statutes irreconcilably conflict, it erred. Even so, this error was harmless because we reach the same outcome as the trial court. The statutes are harmonized by interpreting Carmel's enactment of the Amended Ordinance to regulate mining as an exercise of its broader police powers through zoning. This construction gives effect to both statutes and avoids negation of related statutes. Thus, the Amended Ordinance is a zoning ordinance under the mining statute, part of the larger chapter governing planning and development powers, because it regulates "how real property is developed, maintained, and used" in order to further the purposes behind enactment of a zoning ordinance, including "promoting the public health, safety, comfort, ... convenience, and general welfare." Ind.Code § 36–7–4–601(d)(2). As a zoning ordinance, the requirements of Indiana Code 36–7–4 must have been met for the Amended Ordinance to be validly enacted. Ind.Code § 36–1–3–6 ("If there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner."); Ind. Code § 36–7–4–201 ("[a] unit wanting to exercise planning and zoning powers in Indiana must do so in the manner provided by this chapter."); *see also Sagamore Park v. City of Indianapolis,* 885 F.Supp. 1146 (S.D.Ind.1994) (holding an act of zoning void and unenforceable where not enacted in manner required by statute). Included among these is that the Carmel Plan Commission shall have made recommendations concerning the adoption or amendment of an initial zoning ordinance or a replacement zoning ordinance. Ind. Code § 36–7–4–405(a)(1)(B)(i) and (ii).

We reject Carmel's proposed statutory construction because it creates conflict rather than harmonization between the statutes. Carmel's interpretation negates the requirements found in Indiana Code 36–7–4. Specifically, a unit wishing to regulate land use may evade the process delineated by statute for enactment of a zoning ordinance—such as sending the proposed ordinance to the unit's plan commission for recommendations found in Indiana Code section 36–7–4–405(a)(1)—by exercising broader police powers as an alternative source of authority without having to meet additional requirements. Because the better method of harmonizing these statutes is to recognize that a unit's power to regulate mining through zoning is a sub-set of, and derives from, the State's broader grant of police powers, Carmel's reliance on *Irving Materials* is misplaced. The present situation does not involve a broad prohibition for which there is a specific exception, but rather a broad grant of authority within which there is a more specific grant and associated requirements for the exercise of land use regulation.

We also find unpersuasive Carmel's argument that a local zoning body is not intended to have exclusive authority over

mining regulation. Carmel cites other provisions within Article 7 of the Indiana Code, Planning and Development, that cover economic development and tourism, and solar energy systems.[7] Carmel argues that these proximate statutes must also be read as grants of exclusive authority to local zoning bodies if the mining statute is declared the sole grant of authority on regulation of mining. This would clearly be an absurd result because governance of these areas is not limited to local zoning bodies. Yet, as Carmel asserted during oral argument, such a local body does not fall within the applicable definition of a unit, and thus has no authority of its own. However, the City of Carmel does fall within this definition, and to the extent that it wishes to engage in regulation targeted to the use of land, it must comply with prescribed statutory requirements. Consequently, the mining statute does not give authority directly to a plan commission, but incorporates that body into the process of a unit's regulation of land use by implication of statutory requirements accompanying the exercise of the authority conferred.

■ Here, there is no dispute that the Carmel City Council never submitted the Amended Ordinance to the Carmel Plan Commission, which therefore did not make recommendations upon it prior to enactment. As a result of Carmel's failure to meet statutory requirements for the regulation of land use, Martin Marietta has established a prima facie case.[8] Therefore, the trial court did not abuse its discretion in concluding that Martin Marietta showed a reasonable likelihood of success on the merits.

### C. Balance of the Harms

■ We next analyze the balance of harms caused to the parties to the dispute by granting or denying the preliminary injunction. In its discretion, the trial court concluded that the harms sustained by Martin Marietta if Carmel was not preliminarily enjoined from enforcing the Amended Ordinance "greatly outweigh any harms the City would know if the request for an injunction [was] granted." App. to Br. of Appellant at 20. Based on its findings and conclusions regarding irreparable harm, the trial court assigned significant weight to the company's unquantifiable expenditures toward compliance with the Amended Ordinance, or the total suspension of its operations failing compliance. Other evidence largely disfavored Carmel, such as the acknowledged and undisputed lack of real public danger suffered by Carmel due to Martin Marietta throughout the company's history. The trial court accordingly found Carmel's feared injuries to be "speculative and not convincing." *Id.*

On appeal, Carmel offers no new basis for these proposed harms. Instead it argues that police power regulations are intended to be preventative rather than reactive, and that government may and should impose police power regulations before a public health and safety problem arises.[9] Assuming without deciding that

7. Ind.Code §§ 36–7–2–7 and –8.

8. We need not discuss Martin Marietta's constitutional arguments for the invalidity of the Amended Ordinance.

9. Carmel does not cite to Indiana law on this point, but does cite to cases decided by the Pennsylvania Supreme Court, New Mexico Supreme Court, and California Court of Appeals as supporting its contention that a present necessity need not exist before the government uses its police power in anticipation of the problem in order to prevent it. *See Basehore v. Hampden Indus. Dev. Auth.*, 433 Pa. 40, 248 A.2d 212 (1968); *State ex rel. Hughes v. Cleveland*, 47 N.M. 230, 141 P.2d 192 (1943); *Magan Med. Clinic v. California State*

this is true, we also note that other statutes regulate many of the issues included in the Amended Ordinance, such as air pollution, water quality, truck traffic on city streets, and blasting. Further, issues of safety at its locations are regulated by the Mine Safety and Health Administration under federal law.

Based on these considerations, the trial court's determination that Martin Marietta faced the greater harm was not against the logic and effect of the facts and circumstances. We therefore affirm the trial court's conclusion that Martin Marietta established this requirement for issuance of a preliminary injunction.

### D. Disservice to the Public Interest

■ The effect of the injunction upon the public interest must be weighed with the relative potential harms to the parties. *Hacienda Mexican Rest. of Kalamazoo Corp. v. Hacienda Franchise Group, Inc.*, 569 N.E.2d 661, 666 (Ind.Ct.App.1991), *trans. denied.* Where an injunction is sought that would adversely affect the public interest, we may withhold relief until a final determination of the rights of the parties, although postponement may be burdensome. *Fumo v. Med. Group of Michigan City, Inc.*, 590 N.E.2d 1103, 1108 (Ind.Ct.App.1992), *trans. denied.*

■ Here, the trial court concluded that the public interest would not be disserved if the Amended Ordinance was enjoined. It reached this determination in part because the perceived threats posed by Martin Marietta's continued operations were insubstantial, either to the small numbers of Carmel residents in close proximity to the locations or to all of Carmel's citizenry. In fact, the trial court concluded that Martin Marietta's continued operations were in the best interests of Carmel's citizens because it occupies a prominent position in Carmel's economy. Lastly, founded upon its conclusion that Carmel had enacted the Amended Ordinance in contravention of statutory requirements, the trial court held that the larger public of the State of Indiana would be benefited by requiring Carmel to comply with state laws.

As before, Carmel disputes the trial court's conclusions regarding the threat posed to the health, safety, and welfare of Carmel's citizens. Carmel again argues that it need not establish the existence of an imminent threat or a history of injury caused by Martin Marietta to support the conclusion that the public would be disserved by an injunction. Likewise, Carmel continues to dispute that the Amended Ordinance is an invalid zoning ordinance because it failed to progress through the review and recommendation process of the Carmel Plan Commission prior to enactment.

We have already affirmed the trial court's use of discretion in concluding that Carmel would not suffer the greater harm as between the parties if the Amended Ordinance is enjoined. We have done the same for its finding that the Amended Ordinance is invalid because of the way in which it was enacted. Correspondingly, we cannot say that the trial court's determination that the public interest would be better served if the Amended Ordinance is not enjoined was against the logic and effect of the facts and circumstances.

### Conclusion

Martin Marietta established that it would suffer irreparable harm due to inadequate remedies at law, that it had a reasonable probability of success on the merits, that a balancing of the harms supported issuance of a preliminary injunction, and that the public interest would

*Bd. of Med. Exam'rs,* 249 Cal.App.2d 124, 57 Cal.Rptr. 256 (1967).

not be thereby disserved. Thus, the trial court did not abuse its discretion when it granted a preliminary injunction against enforcement of the Amended Ordinance. We therefore affirm the trial court's judgment.

Affirmed.

SHARPNACK, J., and NAJAM, J., concur.